265 N.J. Super. 569 (1993)
628 A.2d 368
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RICHARD ULRICH, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 8, 1993.
Decided July 1, 1993.
*570 Before Judges PRESSLER, MUIR, Jr. and KESTIN.
Stephen W. Kirsch, Assistant Deputy Public Defender, argued the cause for appellant (Zulima V. Farber, Public Defender, attorney).
Gary A. Thomas, Assistant Prosecutor, argued the cause for respondent (Clifford J. Minor, Essex County Prosecutor, attorney).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Following the denial of his motion to suppress, defendant Richard Ulrich was tried and found guilty by a jury of a charge of second-degree possession of over five pounds of marijuana with intent to distribute, N.J.S.A. 2C:35-5b(10), and of a related fourth-degree charge of possession of over fifty grams of marijuana, N.J.S.A. 2C:35-10a(3). He was sentenced to a seven-year term of imprisonment on the second-degree conviction, with which the fourth-degree conviction was merged.
*571 In challenging the judgment of conviction, defendant first contends that the trial judge erred in denying his suppression motion. Our review of the record satisfies us that the forced entry into his home and the ensuing warrantless arrest and search violated defendant's Fourth Amendment rights.
The relevant facts developed at the suppression hearing are not in substantial dispute. In August 1988, Detective Rinaldi of the Narcotics Bureau of the Essex County Sheriff's Office was advised by a federal postal inspector in Newark that the postal authorities had custody of an express mail package suspected of containing contraband addressed to defendant at his Irvington address. It had already been determined that the return address in Arizona was fictitious. The federal inspector asked Rinaldi for assistance in verifying the suspected contents of the package by use of one of the Narcotics Bureau's trained dogs. Rinaldi, accompanied by a canine handler and his trained dog, complied. The dog's behavior on sniffing the package confirmed the suspiciousness of the contents, and the federal authorities immediately obtained a search warrant from a United States Magistrate permitting the opening and inspection of the package. The package was opened by the federal inspector and Rinaldi. A field test then performed confirmed that it contained marijuana. Some thirteen pounds of the substance were packed in a box of approximately fourteen inches in each dimension. Rinaldi and the postal inspector then resealed the package and planned a controlled delivery to the addressee.
The first delivery was attempted on a Friday evening. A postal inspector driving a regular mail truck rang the doorbell of the address on the package, a one or two family residence. Rinaldi was in an unmarked vehicle parked several houses away watching the proceedings through binoculars. There was no answer at the door, and both vehicles left. They returned for a second attempt at 8:00 a.m. Saturday morning. This time defendant opened the door, and Rinaldi, through his binoculars, observed defendant sign the postal receipt form and accept the package. The post office vehicle left, and a group of both marked and unmarked police cars, *572 alerted by Rinaldi, arrived at the house within the next five or ten minutes. Rinaldi rang the doorbell and announced his identity as a police officer. Obtaining no response to repeated attempts to gain entry in that manner, the officers broke down the front door, and eight or nine policemen entered the house with their handguns drawn. They found the package, which had been opened, on a table in the living room. The sole occupants of the premises were defendant and his wife, who were in bed. They were arrested, and defendant's signature on a consent to search form was procured. The search yielded an empty box of the same type as the delivered package and a scale.
At the suppression hearing Detective Rinaldi explained his decision to have proceeded without either an arrest or search warrant. He believed that there was insufficient probable cause to support a warrant until the package had been accepted by the addressee. He also believed that there was insufficient time to obtain a warrant after the delivery because "knowing there was CDS going into that location, and announcing ourselves as police officers numerous times, not getting a response, we feared there might be the destruction of evidence at that point." It is undisputed that the officers had not set up any surveillance of the premises after the delivery was effected, that they had not alerted any municipal or Superior Court judge of the prospective need for a warrant, and that they did not seek a telephonic warrant.
Our review of the record convinces us that the warrantless entry, arrest and seizure were unlawful. As the Supreme Court reaffirmed in State v. Hutchins, 116 N.J. 457, 463, 561 A.2d 1142 (1989),
... it is well established that "searches and seizures inside a home without a warrant are presumptively unreasonable," Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639, 651 (1980), and hence "prohibited by the Fourth Amendment, absent probable cause and exigent circumstances." Welsh v. Wisconsin, 466 U.S. 740, 749, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732, 743 (1984).
We have no doubt that there was probable cause to arrest once defendant had accepted delivery of the package and exercised control over it. Compare State v. Richards, 155 N.J. Super. 106, *573 382 A.2d 407 (App.Div.), certif. denied, 77 N.J. 478, 391 A.2d 493 (1978) (defendant held entitled to judgment of acquittal where the State failed to prove his knowledge of the controlled delivery of a package containing contraband to his home during his absence). But the second prong of the test which must be met in order to justify the warrantless intrusion into a residence is the existence of exigent circumstances making it impractical, unsafe, or counter-productive to await a warrant. There were no such circumstances here.
In State v. Henry, 255 N.J. Super. 593, 597, 605 A.2d 1113 (App.Div. 1992), we invalidated a warrantless intrusion into a residence where drugs were known to be because of the State's failure to prove exigency. We reached that conclusion relying on the factors we identified in State v. Alvarez, 238 N.J. Super. 560, 568, 570 A.2d 459 (App.Div. 1990), as informing the exigency determination, namely,
(1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) reasonable belief that the contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of contraband while a search warrant is sought; (4) information indicating the possessors of the contraband are aware that the police are on their trail; (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in narcotics traffic; (6) the gravity of the offense involved; (7) the possibility that the suspect is armed; (8) the strength or weakness of the facts establishing probable cause; and (9) the time of the entry.
A recitation of these factors is itself sufficient to demonstrate the absence of exigent circumstances here. The contraband was delivered to a house on a residential street. There was nothing to suggest that a surveillance could not be effected without danger to the police or the risk of alerting defendant while a warrant was obtained. The police had no information suggesting that defendant was himself armed or dangerous. There is nothing to indicate that defendant was known to law enforcement authorities as a drug trafficker or known to be associated with known drug traffickers, or that his criminal record, if any, had even been *574 checked before the delivery.[1] There was nothing to suggest that he was about to remove the contraband at 8:00 a.m. that Saturday morning. With respect to the police concern that the evidence would be destroyed in response to the officers' attempt to gain entry, we reiterate our holding in Henry for the reasons we there stated that that was a police-created exigency which does not justify a warrantless entry.
We also reject the legitimacy of the police concern that it would have been too time consuming to obtain a warrant early on a Saturday morning either in the normal course or telephonically. We point out first that the police were in complete control of the timing of the delivery. Surely, prior to the delivery, a judge could have been alerted of the planned events and of the police need for a prompt authorization to enter, arrest and search. Beyond that, the police had the option of obtaining an anticipatory warrant.
We addressed the legality of an anticipatory warrant in the context of a controlled delivery of contraband in State v. Mier, 147 N.J. Super. 17, 370 A.2d 515 (App.Div. 1977). See also State v. Bell, 195 N.J. Super. 49, 477 A.2d 1272 (App.Div. 1984). We considered in Mier the dangers attendant upon the issuance of a warrant prior to the consummation of the crime and hence prior to actual probable cause, and we recognized both the theoretical and practical problems of entrapment, other police misconduct, over-breadth, prematurity and fundamental fairness. We nevertheless concluded that the technique of the anticipatory warrant is singularly appropriate where, as here, there is a "reasonable probability that the contraband will reach its destination before execution of the warrant because of the controlled delivery by the authorities." Mier, supra, 147 N.J. Super. at 21, 370 A.2d 515. It is also, by the same token, constitutionally unobjectionable if the events giving rise to probable cause occur before execution of the warrant. Thus, we saw then and see now no constitutional infirmity in the *575 issuance of the warrant before the contraband has actually reached its destination provided "there is a strong probability that the continuation of the process already initiated by the shipment of the contraband will in the natural course of events result in the consummation of the crime at the time and place anticipated ...," id. at 21-2, 370 A.2d 515, and provided that execution of the warrant is deferred until that time. The fact that the contraband is physically in the custody of the authorities who can control the time and method of its delivery ordinarily provides, at the time the warrant is issued, the requisite strong probability that the contraband will be on the premises to be searched when the warrant is to be executed. Legal authorities are generally in agreement with the Mier holding. See, e.g., People v. Glen, 30 N.Y.2d 252, 331 N.Y.S.2d 656, 282 N.E.2d 614 (1972); Alvidres v. Superior Court, County of Ventura, 12 Cal. App.3d 575, 90 Cal. Rptr. 682 (1970); United States ex rel. Beal v. Skaff, 418 F.2d 430 (7th Cir.1969); United States v. Garcia, 882 F.2d 699 (2nd Cir.), cert. denied, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989); 2 Wayne R. LaFave, Search and Seizure, § 3.7(c) at 94-100 (2d ed. 1987).
We add, however, a word of caution. As the New York Court of Appeals pointed out in People v. Glen, supra, 30 N.Y.2d at 259, 331 N.Y.S.2d 656, 282 N.E.2d 614, it is only the strong probability that the seizable property will be on the premises when searched that distinguishes the anticipatory warrant from the "hated general writs of assistance of pre-Revolutionary times." See Michael J. Flannery, Abridged Too Far: Anticipatory Search Warrants and the Fourth Amendment, 32 Wm. & Mary L.Rev. 781 (1991); James A. Adams, Anticipatory Search Warrants: Constitutionality, Requirements, and Scope, 79 Ky.L.J. 681 (1990-1). We are, therefore, persuaded that in order to meet constitutional muster, the affidavit in support of an anticipatory warrant must be specific in relating the facts upon which the affiant relies in asserting that the items to be seized will be at the specified place at a specified later time. LaFave at 97-8. See Garcia, supra, 882 F.2d at 703-4; United States ex rel. Beal, *576 supra, 418 F.2d at 433. We are persuaded, moreover, in view of the fact that probable cause does not yet exist at the time the warrant is issued, that in order to assure the existence of probable cause at the time the search is conducted, the warrant must expressly provide that it is to be executed only if and when the specifically described event which gives rise to probable cause actually occurs. As held in United States v. Garcia, 882 F.2d at 703-4, "... when an anticipatory warrant is used, the magistrate should protect against its premature execution by listing in the warrant conditions governing the execution which are explicit, clear and narrowly drawn so as to avoid misunderstanding or manipulation by government agents." See also State v. Gutman, 670 P.2d 1166, 1172 (Alaska App. 1983); 2 Wayne R. LaFave, Search and Seizure, § 3.7(c) at 98-9 (2d ed. 1987).[2] In sum, while we need not here, and hence do not, endorse the use of an anticipatory warrant in circumstances other than the controlled delivery of contraband, we are satisfied that subject to the precautions we have noted, the technique in that situation is not constitutionally violative and reasonably accommodates the needs of law enforcement in a manner consistent with the overriding protections of the Fourth Amendment.
Since the order denying defendant's motion for suppression must be reversed and the matter remanded for trial, we do not address defendant's challenge to the judge's charge to the jury at trial.
The order denying the suppression motion and the judgment of conviction are reversed.
NOTES
[1] In fact defendant, who was thirty-four years old at the time of the crime, and was a life-long resident of New Jersey, had neither a juvenile nor an adult criminal record of any kind.
[2] Although LaFave suggests that the warrant could require telephonic authorization by the issuing judge for actual execution after being advised by law enforcement authorities that the specific triggering event has occurred, he concludes, however, that "it would probably suffice if the judge issuing the warrant deleted the standard command that the warrant be executed forthwith and inserted instead a directive that the warrant may be executed only upon the occurrence of a specified event. This event, of course, would be the delivery of the items sought at the place to be searched." 2 Wayne R. LaFave, Search and Seizure, § 3.7(c) at 99 (2d ed. 1987).