726 A.2d 301 (1999)
319 N.J. Super. 632
STATE of New Jersey, Plaintiff-Appellant/Cross-Respondent,
v.
Christy SANTIAGO, Defendant-Respondent/Cross-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued November 16, 1998.
Decided March 30, 1999.
*302 Betsy Phillips, Assistant Prosecutor, for plaintiff-appellant/cross-respondent (Jeffrey S. Blitz, Atlantic County Prosecutor, attorney; James M. Ruberton, Assistant Prosecutor, of counsel and on the brief).
Jacqueline E. Turner, Assistant Deputy Public Defender, for defendant-respondent/cross-appellant (Ivelisse Torres, Public Defender, attorney; Ms. Turner, of counsel and on the brief).
Before Judges HAVEY, SKILLMAN and LESEMANN.
The opinion of the court was delivered by LESEMANN, J.S.C. (temporarily assigned).
This case comes before the court on an appeal by the State which contends that imposition of a probationary sentence on defendant was error because a custodial sentence was mandatory, and a cross-appeal by defendant, who claims that the trial court erred in denying her motion to suppress evidence seized from the trunk of the car she was driving when she was arrested.[1] We conclude that defendant's suppression motion should have been granted. Accordingly, defendant's conviction must be reversed and there is thus no need to resolve the sentencing issue raised by the State's appeal.
The facts pertaining to the motion are clear and may be simply stated. On August 21, 1996, a postal inspector observed what he considered a suspicious package coming through the Philadelphia Airport addressed to defendant at a post office box in Mizpah, New Jersey. The wrapping on the package *303 was typical of that used by drug dealers.[2] The package had a California return address but an examination of postal records showed no correlation between that address and the name of the sender shown on the package. The postal inspector had the parcel "sniffed" by a narcotics dog, whose reaction indicated that drugs were inside the parcel. The inspector then applied for and obtained a federal search warrant to open and examine the parcel.
When the parcel was opened, the postal authorities found over four pounds of marijuana. They then carefully resealed the package (to avoid any indication that it had been opened) and contacted the Mizpah postmaster to arrange a "controlled delivery." When they did so the postmaster told the postal agents that there was another parcel in the post office, also addressed to defendant, with the same California return address. He said further that defendant had received two prior packages from that address, which she had picked up at the post office.
The agents then set up their "controlled delivery." The postmaster called defendant to advise that there were parcels for her at the post-office. When defendant arrived she was given the two packages, which she placed in the trunk of the car she was driving. As she began to drive away, she was stopped, arrested, and the car taken to the local police department. The postal authorities and the police then opened the trunk and found the two parcels which they proceeded to open. In addition to the marijuana they had earlier found, they found cocaine wrapped with the marijuana and also found more marijuana in the second package.[3]
The authorities did not obtain a warrant to examine the second package, as they had for the first package. They offered no clear reason for failing to do so. One officer testified that the need for a warrant "never came to mind." Another indicated that the warrant would have taken too long and might have alerted the defendant, although he gave no reason why the second warrant should have taken any longer than, or raised any problem beyond, what was involved in the first warrant.
Defendant was charged under a four-count indictment which included possession of cocaine, a third degree offense under N.J.S.A. 2C:35-10a(1) (count one); possession of over one-half ounce of cocaine with intent to distribute, a second degree crime under N.J.S.A. 2C:35-5a(1) and 2C:35-5b(2) (count two); possession of over fifty grams of marijuana, a fourth degree offense in violation of N.J.S.A. 2C:35-10a(1) (count three); and possession of more than five pounds of marijuana with intent to distribute, a second degree offense in violation of N.J.S.A. 2C:35-5a(1) and 2C:35-5b(10) (count four).
Defendant moved to suppress the evidence found in the second container in the car trunk. That motion was denied and defendant then proceeded to trial where a jury found her guilty on all four counts. The trial court merged the conviction under count one into that under count two and the conviction under count three into that under count four. It then sentenced defendant on count two to a five-year probationary term with 180 days to be served in a day reporting program. On count four it imposed an identical sentence to be served concurrently with that under count one.
The State appealed that sentence, noting that the count two and count four convictions were for second degree offenses which carry presumptive terms of incarceration. The State claims the trial judge erred by reducing those convictions from second degree to third degree offenses for sentencing purposes and then waiving the otherwise mandatory incarceration on the ground that this was an exceptional case. Defendant argues that there was ample justification for the *304 court's sentence but also argues, in what we find to be the dispositive issue, that her suppression motion should have been granted.
In considering the validity of the warrantless search here, we begin with the basic proposition that the Fourth Amendment to the United States Constitution, and Article I, paragraph 7 of the New Jersey Constitution, normally require law enforcement officers to obtain a warrant before searching anyone's possessions. State v. Lewis, 116 N.J. 477, 488, 561 A.2d 1153 (1989); State v. Hill, 115 N.J. 169, 173, 557 A.2d 322 (1989). There are exceptions to that principle, but where "the State seeks to validate a warrantless search, it bears the burden of bringing it within one of those exceptions." State v. Lund, 119 N.J. 35, 37, 573 A.2d 1376 (1990). Here the State argues that the applicable exception is the so called "automobile exception" which had its genesis in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L. Ed. 543 (1925).[4] The term is a "short-hand way of stating the circumstances under which law-enforcement officers may conduct a warrantless search of a car." State v. Colvin, 123 N.J. 428, 431, 587 A.2d 1278 (1991).
The automobile exception is based on the inherent mobility of motor vehicles, which often "creates exigent circumstances that make the warrant requirement impractical." Ibid. (quoting Joann Grozuczak Goedert, et al., Investigation and Police Practices: Warrantless Searches and Seizures, 76 Geo. L.J. 561, 610-11 (1988)). However, in later years an additional justification for the exception has emerged from what is termed the lesser expectancy of privacy that inheres in a motor vehicle, particularly given the panoply of regulations and restrictions placed on its operation and ownership. Ibid; see also, Pennsylvania v. Labron, 518 U.S. 938, 116 S.Ct., 2485, 135 L. Ed.2d 1031 (1996).
Essentially, the automobile exception holds that when law enforcement authorities have probable cause to believe that contraband or other unlawful objects are in an automobile, and the mobility of the automobile makes it impractical to first obtain a search warrant, the authorities may conduct the search without a warrant. State v. Colvin, supra, 123 N.J. at 429-30, 587 A.2d 1278. In recent years, the United States Supreme Court has ceased to articulate a need to show "exigent circumstances" whenever the automobile exception is to be applied. The Court's most recent short statement of the rule is that "if a car is readily mobile and probable cause exists to believe it contains contraband, the police may search the vehicle." Pennsylvania v. Labron, supra, 518 U.S. at 940, 116 S.Ct. at 2487, 135 L. Ed.2d at 1036. Indeed, the Court reversed a Pennsylvania Supreme Court decision that had suppressed a warrantless automobile search because the prosecution had not demonstrated "exigent circumstances."[5] To the same effect, see California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L. Ed.2d 406 (1985), upholding a warrantless search of a motor-home without a showing of any specific exigent circumstances. Compare the earlier case of Coolidge v. New Hampshire, 403 U.S. 443, 460, 91 S.Ct. 2022, 2034, 29 L. Ed. 2d 564, 579, (1971), where the Court refused to apply the automobile exception to the search of an automobile parked in a residential driveway, since there was no showing that it was "not practicable to secure a warrant" before the search.
State v. Colvin, supra, represents the latest pronouncement by the New Jersey Supreme Court on the automobile exception. There the Court dealt with a car parked on a public street and observed that the applicability *305 of "the automobile exception does not stand or fall on the fact that a moving car was stopped and then searched." 123 N.J. at 433, 587 A.2d 1278. The Court summarized the basis for the exception and the need for exigent circumstances:
The justification to conduct a warrantless automobile search does not turn on whether the vehicle is parked or moving. The justification turns on the circumstances that make it impracticable to obtain a warrant when the police have probable cause to search the car. When, as here, the police have no advance knowledge of the events to unfold, no warrant is required to search a parked car if the police have probable cause to believe that the car contains criminal contraband and have articulable reasons to search the vehicle immediately to prevent the loss or destruction of the evidence.

[Id. at 437, 587 A.2d 1278.]
Although we are not concerned with a parked car, the Court's statement is instructive. It re-emphasizes the rationale for the automobile exception: the existence of circumstances which render it impracticable to obtain a warrant. And it makes clear that the justification for application of the exception turns on the existence of those circumstances in a particular case. In words directed to a different factual issue but strikingly applicable here, it refers to a need for prompt action without a warrant when "the police have no advance knowledge of the events to unfold." Ibid.[6]
Tested by those standards, the warrantless search here fails to qualify as one justified by the automobile exception. It was not impracticable to obtain a warrant. There were no exigent circumstances. This was not a case where the police had "no advance knowledge of the events to unfold." Here the entire operationpossession of the two parcels, delivery of the parcels, the defendant's receipt of the packages and the subsequent stopping and searching of the vehiclewas entirely within the control of the police and was orchestrated by the police. The police had full knowledge of the existence of both parcels before they even contacted defendant to have her come to the post office and receive the parcels. Just as they had obtained a warrant to search the first parcel, they could easily have done the same with the second parcel. There is no basis for a claim that obtaining a warrant for the second parcel would have been any more difficult, or taken any more time, than obtaining the first warrant. And even if additional time had been required, the police need only have delayed for a commensurate period of time the postmaster's notification to defendant and the request that she come to the post office to receive the parcels.
The facts here are analogous to those in State v. Ulrich, 265 N.J.Super. 569, 628 A.2d 368 (App.Div.1993). There too, the postal authorities spotted a suspicious package addressed to the defendant. They obtained a warrant, opened the package, found drugs, resealed the package and arranged for a "controlled delivery." The delivery was made to the defendant's home and shortly thereafter the authorities forced their way into the house, without a warrant, and arrested and searched the defendant. The court held that the warrantless search violated the defendant's constitutional rights and accordingly it suppressed the evidence seized in the house. The court responded to the State's claim that exigent circumstances justified the search, by describing the events as a "policecreated exigency which does not justify a warrantless entry." Id. at 574, 628 A.2d 368. It noted that a warrant (perhaps an anticipatory warrant) could easily have been obtained since the police controlled the original possession and subsequent delivery of the *306 parcel. Accordingly, it found no justification for the warrantless entry.
We agree with the court's reasoning in Ulrich and we believe it applies here as well. While debate may continue as to the outer reaches of the automobile exception, and courts will probably continue to be troubled by its applicability in particular cases and the degree of exigency and impracticability that must be shown,[7] it remains true in this State that the doctrine rests on exigent circumstances and the impracticability of obtaining a warrant in certain situations. While a diminished expectation of privacy may contribute to the constitutional legitimacy of the doctrine, no New Jersey case has found that factor, by itself, to be a sufficient basis for application of the automobile exception. Colvin makes clear that exigency and impracticability remain essential underpinnings of the automobile exception in this state.
With no exigency or impracticability here, the only conceivable justification for not obtaining a warrant is that which was suggested by one of the officers: it simply never occurred to them to do so. Defendant argues that the officers "dropped the ball" and that conclusion seems inescapable. However, it is settled that there is no good faith exception to the constitutional requirement of a search warrant, and no basis to excuse an otherwise unlawful search simply because the authorities were not acting knowingly, maliciously or vindictively. State v. Novembrino, 105 N.J. 95, 145-46, 519 A.2d 820 (1987).
One further point requires discussion: the possible significance of the search and seizure provision of the New Jersey Constitution, N.J. Const. Art. I, ¶ 7, particularly since Pennsylvania v. Labron was decided by the United States Supreme Court five years after the New Jersey Supreme Court decided Colvin.
In Colvin, the Court's discussion of the New Jersey Constitution was limited to one indirect reference near the end of its opinion:
With rare exceptions, predicated on unique State interests, see State v. Hempele, 120 N.J. 182, 576 A.2d 793 (1990), we have harmonized our search-and-seizure law with Supreme Court precedent. State v. Lund, 119 N.J. 35, 573 A.2d 1376 (1990). We do so here.
[Colvin, supra, 123 N.J. at 437, 587 A.2d 1278.]
We understand that statement to mean that the rule enunciated represented the Court's view of the automobile exception under both the United States and the New Jersey Constitutions. The rule under both had been "harmonized."
In view of Labron, however, it seems reasonable to conclude that today the applicable rule under federal constitutional law is different from that set out in Colvin. As expounded by the final arbiter of such matters, the United States Supreme Court, the automobile exception can be applied consistently with the Fourth Amendment without a showing of exigency, or impracticability. Labron, supra, 518 U.S. at 940, 116 S.Ct. at 2487, 135 L. Ed.2d at 1036.
If that is so, however, that would not necessarily change the governing construction of the New Jersey Constitution. On that issue, the view of the New Jersey Supreme Court is determinative. See State v. Hempele, 120 N.J. 182, 195-97, 576 A.2d 793 (1990); State v. Lund, 119 N.J. 35, 52-53, 573 A.2d 1376 (1990) (Justice Pollock, concurring); State v. *307 Novembrino, 105 N.J. 95, 144-159, 519 A.2d 820 (1987). We see no reason to conclude that the New Jersey Supreme Court would change its view of the New Jersey Constitution, and reject the rule it adopted in Colvin, simply to comply with the Labron view of the Fourth Amendment. While the New Jersey Supreme Court has expressed a preference for compatible interpretations of the two constitutions, it has also been willing, when satisfied with the soundness of its view, to adopt a limitation on search and seizure under the New Jersey Constitution which is more restrictive than that adopted by the United States Supreme Court. See State v. Hempele, supra, 120 N.J. at 223-225, 576 A.2d 793.
In Colvin, the Court considered and discussed the automobile exception at length. It referred to the various authorities cited in Labron and discussed most of them in the context of reaching its decision and articulating its view of the governing test under the automobile exception. Nothing said in Labron represented any new analysis or new authority not before the Court in Colvin.[8] Nothing of which we are aware suggests any reason to believe the Court now sees the automobile exception differently than the way it saw it, and expressed it, in Colvin. We see no reason to believe that the Colvin holding is not still the applicable rule under the New Jersey Constitution, and thus, to be admissible the disputed evidence here must still meet the test of Colvin. There must be a showing of exigencya showing that it was "impracticable" for the authorities to obtain a warrant before seizing the package in question. For the reasons set out above, we are satisfied that the police actions here did not meet that standard. Therefore, the warrantless search of the second parcel was unlawful and the evidence resulting from that search must be suppressed.
At oral argument, the State acknowledged that without that evidence, defendant could not be convicted of possessing more than five pounds of marijuana, nor could she be convicted of possessing cocaine, since it is not clear how much marijuana had been in the first parcel or whether it contained any cocaine. She could be convicted of possessing less than five pounds of marijuana, which would be a third degree offense. However, the State has no right to appeal a sentence for such an offense, N.J.S.A. 2C:44-1(f)(2) and thus the State's appeal of the non-custodial sentence imposed by the trial court is moot.
There remains a question as to whether defendant's conviction should be set aside in its entirety and the matter remanded for a new trial, or whether it should simply be modified to reflect conviction for a third degree offense. While such modification is a possibility, questions such as the possible prejudicial effect of testimony as to the contents of the second package are issues that can better be addressed, at least initially, by the trial court, which has not yet had an opportunity to consider them. Accordingly, we remand the matter to the trial court for further proceedings consistent with this opinion, without determining at this point whether the conviction must be reversed and a new trial held, or whether the conviction may be modified as noted above.
We have also considered defendant's remaining contentions, that the trial court erred in "failing to give a limiting instruction concerning the jury's use of other crimes or bad acts evidence," and that the court erred in denying defendant's motion for a judgment of acquittal at the end of the State's case. We are satisfied that those arguments are without merit and do not warrant discussion in this opinion. R. 2:11-3(e)(2).
Reversed and remanded for further proceedings.
NOTES
[1] Defendant also alleges trial errors which we refer to briefly below.
[2] The testimony was that such packages are often heavily taped in an effort to conceal the scent of drugs from police narcotics dogs.
[3] The total marijuana from both packages was over five pounds. The total cocaine was 30.29 grams. The State did not have records differentiating between the two packages, indicating what quantity of which drug was in either of the packages.

A scale, described as consistent with the kind used by drug dealers, was also found in the car trunk.
[4] The trial court expressed some doubt as to whether the automobile exception applied here, and based its decision on what it considered an alternate theory of "exigent circumstances." On appeal, however, the State bases its argument squarely and solely on the automobile exception.
[5] In Labron, Justices Stevens and Ginsburg dissented on the ground that the state court had based its determination on Pennsylvania law which required a showing of exigent circumstances beyond a simple demonstration that the contraband was in an automobile. The majority disagreed with that reading of the state court decision. None of the nine justices, however, disagreed with the quoted articulation of the automobile exception under federal constitutional law.
[6] In State v. Demeter, 124 N.J. 374, 590 A.2d 1179 (1991), decided shortly after Colvin, the Court dealt with a warrantless search of a container found in an automobile stopped for a motor vehicle violation. The Court noted that in California v. Acevedo, 500 U.S. 565, 111 S.Ct. 1982, 114 L. Ed.2d 619 (1991), a decision rendered just a short time before Demeter, the United States Supreme Court had held that the standard for a warrantless search of a container found in an automobile was essentially the same as that for a search of the automobile itself. In Demeter the Court found there was no probable cause to believe that either the car generally or the container in particular contained drugs, and thus, for that reason, there was no basis for a warrantless search of either.
[7] Current debate over the automobile exception frequently deals with the nature and extent of the alleged exigent circumstances. As in Colvin, automobiles that are parked and not in motion have raised issues as to the applicability of the exception and it has been argued that authorities should be required to take temporary control of, or render immobile, an automobile suspected of harboring contraband while they obtain a warrant to search the vehicle. In addition to State v. Colvin, supra, 123 N.J. at 429, 431-32, 587 A.2d 1278, see e.g., State v. Alston, 88 N.J. 211, 233-34, 440 A.2d 1311 (1981); State v. Letman, 235 N.J.Super. 337, 343-47, 562 A.2d 260 (App.Div. 1989); see also 3 Wayne R. LaFave, Search and Seizure §§ 7.2(a),(b) (3d ed.1996). While such arguments have frequently been rejected, it remains true in this State that the principle of the automobile exception rests on exigent circumstances: the debate concerns only the degree of required exigency and whether the suggested alternatives represent any improvement over a warrantless search. Here, however, as noted, we are not concerned with the degree of exigency. There simply was no exigency of any kind.
[8] None of the cases cited in Labron had been decided after Colvin.