**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1034-19T1

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

ALVI M. GHAZNAVI,

      Defendant-Appellant,

_____

          Argued September 21, 2020 – Decided November 24, 2020

          Before Judges Rothstadt, Mayer, and Susswein.

          On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 19-02-0196.

          Kevin G. Roe argued the cause for appellant.

          Mark Musella, Bergen County Prosecutor, argued the cause for respondent (Edward F. Ray, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

      Defendant, Alvi H. Ghaznavi, appeals from his conviction after pleading

guilty to first-degree maintenance of a controlled dangerous substance (CDS)

production facility. He challenges the denial of his motion to suppress evidence without a hearing and the denial of his motion for a <u>Franks</u> hearing.[1] He also challenges the twelve-year state prison sentence imposed in accordance with his negotiated plea agreement. After reviewing the record in light of the applicable principles of law, we reject defendant's contentions and affirm the conviction and sentence.

I.

In September 2018, defendant was arrested at his home after accepting a "controlled delivery" of a package containing CDS. His home was searched pursuant to an anticipatory search warrant that became effective upon acceptance of the package. The search revealed a substantial quantity of CDS and materials used to manufacture and distribute CDS. In February 2019, defendant was charged by indictment with (1) first-degree maintaining a CDS production facility, N.J.S.A. 2C:35-4; (2) second-degree manufacturing or possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(10)(b); (3) fourth-degree possession of CDS, N.J.S.A. 2C:35-10(a)(3); (4) fourth-degree distribution of drug paraphernalia, N.J.S.A. 2C:36-3; (5) second-degree financial facilitation of criminal activity (money laundering), N.J.S.A.

---

[1] <u>Franks v. Delaware</u>, 483 U.S. 154 (1978).

A-1034-19T1

2C:21-25(a); and (6) second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a).

Defendant moved to suppress the evidence seized in the search of his home, contending that the anticipatory search warrant was the fruit of an unlawful search of another package that had been conducted months earlier by the United States Postal Service (USPS). After hearing oral argument, the trial court denied defendant's motion to suppress without an evidentiary hearing, ruling that defendant did not have standing to challenge the package search that had been conducted by the USPS. The trial court also denied defendant's request for a <u>Franks</u> hearing to challenge the affidavit in support of the anticipatory search warrant.

In June 2019, defendant pled guilty to maintaining a CDS production facility. In exchange for defendant's guilty plea, the prosecutor agreed to dismiss the remaining five counts of the indictment. The prosecutor also agreed to recommend a twelve-year prison sentence with a three-year period of parole ineligibility. The plea agreement allowed defendant to argue for a shorter term of imprisonment. In October 2019, defendant was sentenced in accordance with the plea agreement to twelve years in prison with a three-year term of parole ineligibility.

A-1034-19T1

Defendant raises the following issues for our consideration:

I.  DEFENDANT HAD AUTOMATIC STANDING TO CHALLENGE THE WARRANTLESS SEARCH OF THE MAY 2018 PACKAGE.

II.  DEFENDANT WAS ENTITLED TO A FRANKS HEARING BASED UPON THE PURPOSEFUL AND/OR RECKLESS OMISSIONS IN DETECTIVE PAOLOZZI'S WARRANT AFFIDAVIT.

III.  THE ATTENUATION DOCTRINE DID NOT APPLY IN THIS CASE.

IV.  THE CUSTODIAL TERM IMPOSED ON DEFENDANT WAS EXCESSIVE.

## II.

We first address defendant's contention that the anticipatory search warrant was the poisoned fruit of the warrantless package search conducted by USPS. The trial court ruled that defendant did not have standing to challenge that warrantless search. The court further ruled that even if defendant had standing, the subsequent search of his home pursuant to the anticipatory warrant was too attenuated from the primary illegality of the USPS package search to invoke the exclusionary rule. We agree with the trial court on both grounds for denying defendant's suppression motion.

The USPS had been investigating suspicions that postal employees in northern New Jersey were targeting parcels that might contain narcotics and re-

routing those packages to addresses within their control.  In May 2018, the USPS opened a thirty-seven pound parcel (May package) that was in transit from Los Angeles to New Jersey.  The USPS discovered eight and one-half pounds of marijuana concealed in a stereo speaker.    It is not clear on the limited record before us why the USPS opened this package without first obtaining a warrant.[2]

The May package was mailed from Los Angeles to an address in Bergenfield but was "over labeled" to be delivered to an address in Harrison. The package was not initially addressed to defendant or his residence in Paramus.  Nor was it re-routed to him or his residence.

Defendant claims he was tracking the May package.  The prosecutor contends that the record does not support defendant's assertion.  We are mindful that the State bears the burden of showing that a defendant does not have standing.  See State v. Randolph, 228 N.J. 566, 582 (2017) (noting "the State bears the burden of showing that defendant has no proprietary, possessory, or

---

[2] The State maintains the package had been damaged in transit and that the USPS opened it for that reason. For purposes of resolving the search and seizure issues defendant raises on appeal, we assume  that the warrantless search leading to the discovery of the marijuana in the stereo speaker was unlawful.  We note that if defendant had standing to challenge the warrantless inspection of the May package, the State would be free at the ensuing suppression hearing to argue that the USPS did not violate the Fourth Amendment when it opened the package and discovered the marijuana.

participatory interest in either the place searched or the property seized") (citing State v. Brown, 216 N.J. 508, 528 (2014)). We also acknowledge that by virtue of the trial court's standing ruling, defendant did not have an opportunity to present evidence at a plenary suppression hearing. We therefore assume, for purposes of this appeal, that defendant was tracking the May package on the USPS website although the parcel was not addressed to him or his residence.

Postal inspectors determined that an individual who was tracking the May package was tracking several other parcels sent from Los Angeles to New Jersey that weighed between twenty and fifty pounds. Postal inspectors also identified several New Jersey addresses to which similar packages were sent, including defendant's residence in Paramus. They determined that from March to September 2018, fifteen parcels sent from California weighing between sixteen and forty-two pounds were delivered to defendant's address.

In August 2018, a postal inspector advised a detective in the Bergen County Prosecutor's Office (BCPO) Narcotics Task Force that the USPS had opened the May package and found a substantial quantity of marijuana inside. On September 19, 2018, the USPS intercepted a twenty-one-pound parcel

addressed to defendant's wife at their shared Paramus residence.[3] The package was examined by a narcotics detection canine, which alerted to the presence of CDS.

The BCPO Task Force arranged a controlled delivery of the parcel to defendant's residence and obtained an anticipatory search warrant of the home.[4] The application for the anticipatory warrant included information that was provided to the BCPO Task Force by postal inspectors and the positive alert by the drug detection canine. The warrant directed that it be executed only upon successful delivery of the parcel. Defendant accepted delivery, whereupon he was arrested and a search of the residence was conducted pursuant to the warrant.

---

[3] Defendant's wife was charged as a co-defendant and joined in defendant's motion to suppress. She is not a party to this appeal.

[4] See State v. Ulrich, 265 N.J. Super. 569, 574–76 (App. Div. 1993) (explaining procedures for seeking and executing an anticipatory search warrant, which does not take effect unless a specifically described event occurs).

## A.
### Standing

The New Jersey Supreme Court has long since parted company with federal standing precedents, relying on independent state constitutional grounds to confer standing in situations where defendants charged in federal court would be foreclosed from challenging a search or seizure.  State v. Alston, 88 N.J. 211, 218–30 (1981).  While our standing rule is unquestionably broad, there nonetheless are limits on when a defendant can bring a motion to suppress evidence as a fruit of unlawful police conduct.  See State v. Bruns, 172 N.J. 40, 59 (2002) (noting  "[a]though we recognize that in most cases in which the police seize evidence implicating a defendant in a crime that defendant will be able to establish an interest in the property seized or place searched, our broad standing rule necessarily has limits").

Under our State Constitution, "a criminal defendant has standing to move to suppress evidence from a claimed unreasonable search or seizure 'if he has a proprietary, possessory, or participatory interest in either the place searched or the property seized.'"  State v. Johnson, 193 N.J. 528, 541 (2008) (quoting Alston, 88 N.J. at 228).  It is clear here that defendant did not have a possessory or proprietary interest in the May package.  Because he is not charged with constructive possession of the marijuana found in the May package, he does not

A-1034-19T1

have "automatic" standing to challenge the warrantless search of that parcel by the USPS. See Randolph, 228 N.J. at 585 (2017) (reaffirming that unless property was abandoned, defendant was a trespasser, or has been evicted from premises, a defendant has automatic standing to challenge a search if charged with illegal possession of anything seized during the search). Rather, defendant's standing argument hinges on whether he has a "participatory" interest in the May package.

In State v. Mollica, 114 N.J. 329 (1989), the Court explained what constitutes a participatory interest in a place or item for purposes of establishing standing to file a motion to suppress. Co-defendants Mollica and Ferrone were charged with gambling offenses after state police discovered bookmaking paraphernalia in their separate hotel rooms. The probable cause for the warrants to search their rooms was based in part on an analysis of hotel telephone records of calls to and from Ferrone's hotel room. Law enforcement obtained the telephone connection records from the hotel without a warrant. The trial court ruled that the telephone billing records were obtained unlawfully. Mollica argued the search warrant for his hotel room was thus the poisoned fruit of the unlawfully obtained telephone records. Mollica, 114 N.J. at 335-36.

9

The State argued that Mollica did not have standing to object to the seizure of telephone records pertaining to calls placed from Ferrone's room. In rejecting the State's argument, the Court emphasized that a participatory interest "stresses the relationship of the evidence to the underlying criminal activity and defendant's own criminal role in the generation and use of such evidence." Id. at 339. As the Court explained, our State Constitution confers standing on a person who "had some culpable role, whether as a principal, conspirator, or accomplice, in a criminal activity that itself generated the evidence." Id. at 339–40.

The State charged Mollica with participating in illegal bookmaking activities that included the use of the telephone in Ferrone's hotel room. Those illegal activities were thus connected to the telephone records in question. The telephone in Ferrone's hotel room, in other words, was used in furtherance of an unlawful gambling enterprise of which Mollica was a charged participant. Id. at 339-40. The Court concluded, "[t]here is thus sufficient connection between the telephone toll records and the underlying criminal gambling for which this defendant is charged, and a sufficient relationship between the defendant and the gambling enterprise, to establish a participatory interest on the part of defendant in this evidence." Ibid.

A-1034-19T1

As the Supreme Court noted in <u>Bruns</u>, the <u>Mollica</u> Court "emphasized the relationship between the evidence seized and the underlying criminal activity with which the defendant was charged, as well as the extent to which a co-defendant played a role in generating and using that evidence." <u>Bruns</u>, 172 N.J. at 40.  In the case before us, defendant is not alleged to have played a culpable role in generating or using the May package.  Defendant did not send that package.  It was not initially addressed to him or his residence.  Nor was it re-routed to defendant or his residence.

We deem it especially significant that defendant is not charged with conspiring with or aiding and abetting the person who sent the May package, the person to whom it was addressed, or the person who re-routed it.  Those individuals are not co-defendants.  Thus, defendant, unlike Mollica, is not charged with being a participant in an enterprise that generated the evidence that was unlawfully seized.

We acknowledge that tracking a package suggests some interest in its delivery status.  But we deem it to be more important that defendant is not being held criminally responsible for the May package.  Nor is he being held criminally responsible for the interstate drug trafficking operation that mailed the package from California, or any criminal enterprise that re-routed the

11

package while in transit. In these circumstances, we are not prepared to hold that tracking a package automatically establishes a sufficient nexus to confer standing.

We find further support for this conclusion in the Supreme Court's decision in <u>Bruns</u>. In that case, police stopped a vehicle for speeding and arrested the driver, Edwards, when they discovered she had an outstanding warrant for failure to appear in court. The police unlawfully conducted a warrantless search of her vehicle, revealing a knife and a toy gun. Bruns was not a passenger in the vehicle and was not in the vicinity when it was stopped and searched. The knife and toy gun later were linked to an armed robbery that occurred a week before the traffic stop. Bruns and a passenger in Edwards's car at the time it was stopped, Evans, were both implicated in the robbery. <u>Bruns</u>, 172 N.J. at 57.

Bruns argued he had standing to suppress the fruits of the unlawful car search, "point[ing] to the relationship between the weapons seized from Edwards' car and the crime with which he was charged." <u>Ibid</u>. In rejecting that argument, the Court explained:

> Accepting that generalized connection, however, we are unpersuaded that the connection is adequate to confer standing based on a participatory interest. That evidence implicates a defendant in a crime is not, in and

of itself, sufficient to confer standing. There also must be at a minimum some contemporary connection between the defendant and the place searched or the items seized.

[Id. at 57–58.]

The Court emphasized that the robbery occurred seven days before the items were found, concluding the circumstances thus were attenuated. Id. at 58. The Court reasoned that where "substantial time passes between the crime and the seizure of evidence, and a proprietary connection between defendant and the evidence no longer exists, the defendant's basis for being aggrieved by the search will have diminished." Id. at 59. See also State v. Curry, 109 N.J. 1, 10 (1987) (noting the nexus between the property seized and individual defendants may become so attenuated as to eliminate standing).[5] The Court added:

In addition to the temporal aspects of a specific search or seizure, a showing that the search was not directed at the defendant or at someone who is connected to the crime for which he has been charged also will diminish a defendant's interest in the property searched or seized.

[172 N.J. at 58.]

---

[5] We note the concept of attenuation as applied in the context of standing is analytically distinct from the "attenuation doctrine" that we discuss in section II(B), infra. The attenuation doctrine is an exception to the "fruit of the poisonous tree" principle that generally defines the scope of the exclusionary rule.

In the case before us, the relationship between defendant and the May package is significantly more attenuated than the nexus between Bruns and the evidence found in the unlawful car search. Here, there was never a "proprietary connection between defendant and the evidence" that defendant seeks to suppress. Ibid. In Bruns, the robbery occurred seven days before the motor vehicle stop and ensuing search. The May package was opened four months before the BCPO applied for an anticipatory warrant to search defendant's residence. In Bruns, the State intended to use the illegally seized knife and toy gun as evidence at the robbery trial alleging that the defendants acted in concert. Nothing in the record before us suggests the marijuana found in the stereo speaker would have been introduced against defendant if he elected to go to trial. We emphasize again that unlike Mollica and Bruns, Ghaznavi was not charged with being part of a criminal enterprise that generated the evidence at issue.

Defendant, moreover, has not shown any "contemporary connection" with the May package, as was shown in Bruns. 172 N.J. at 58. Similarly, the search of the May package was not "directed at []defendant or at someone who is connected to the crime for which he has been charged." Id. at 59. Considering all of these circumstances, we conclude that defendant's interest in the May package, premised solely upon his alleged tracking on the USPS website, is at

14

most a "generalized connection." Bruns, 172 N.J. at 57. As such, it is insufficient in and of itself to confer standing based on a participatory interest.

Finally, with respect to standing, we have considered whether the prosecutor unwittingly acknowledged a nexus between defendant and the May package by including information about it in the affidavit supporting the anticipatory search warrant. Arguably, by including information about the May package in the supporting affidavit, the prosecutor essentially took the position that the marijuana concealed in the stereo speaker is relevant to whether there was probable cause to search defendant's home, thereby linking the May package to defendant's suspected criminal activities.[6]

Our standing jurisprudence has taken a different path from that taken by the United States Supreme Court in part because we do not permit a prosecutor to take conflicting positions with respect to a defendant's privacy interests in seized property. See Johnson, 193 N.J. at 543. In Johnson, the Supreme Court

---

[6] From our reading of the search warrant application, we conclude that the information about the May package was provided as general background to explain the USPS's investigation of numerous suspicious packages, rather than as proof that defendant or his house was directly linked to the May package. As we explain in section II(B), infra, the information in the search warrant application relating to the May package was not needed to establish probable cause to search defendant's home, given the positive drug detection canine alert to the parcel that defendant accepted in the course of the controlled delivery.

A-1034-19T1

noted that New Jersey has eschewed the United States Supreme Court's rejection of the "automatic standing" rule, in part because

> the State should not be placed in the position of taking seemingly conflicting positions, on the one hand prosecuting a defendant for possessing an item in violation of the law while on the other arguing that the defendant did not, for standing purposes, possess a privacy interest in the property seized.
>
> [Ibid. (citing Alston, 88 N.J. at 223).]

We do not believe, however, that including information about the May package in the search warrant application is tantamount to charging defendant with criminal possession of that package for purposes of conferring standing. The concern regarding conflicting prosecutorial positions, first expressed by our Supreme Court in Alston and reiterated more recently in Johnson, explains why New Jersey retained the "automatic standing" rule abandoned by the United States Supreme Court in Rakas v. Illinois, 439 U.S. 128 (1978), United States v. Salvucci, 448 U.S. 83 (1980), and Rawlings v. Kentucky, 448 U.S. 98 (1980). However, in this instance it is plainly apparent that the automatic standing rule does not apply because defendant is not charged with unlawful possession of the marijuana found in the May package.

As the Supreme Court made clear in Bruns, "[t]hat evidence implicates a defendant in a crime is not, in and of itself, sufficient to confer standing." 172

A-1034-19T1

N.J. at 58. Applying that principle, even were we to assume that the information about the May package implicated defendant in criminal activity, we do not believe that including that information in the search warrant application would be sufficient to confer standing based on a participatory interest. Accordingly, we conclude the State carried its burden of establishing that defendant did not have standing to challenge the warrantless search conducted by the USPS. Randolph, 228 N.J. at 582.

B.
Attenuation of Taint

The trial court ruled that even if defendant had standing to challenge the warrantless search of the May package, the taint of that search on the anticipatory warrant application is too attenuated to suppress the incriminating evidence found in defendant's residence. We agree.

The familiar general rule is that evidence gathered as a result of unlawful police conduct must be suppressed from the State's case-in-chief as a "fruit of the poisonous tree." Wong Sun v. United States, 371 U.S. 471, 487–88 (1963). However, the United States Supreme Court has long rejected a "per se" or "but for" test for determining whether evidence is a poisoned fruit that must be suppressed. In Brown v. Illinois, the Court explained:

A-1034-19T1

[w]e need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'

[422 U.S. 590, 599 (1975).]

The Court in Brown thus devised the attenuation doctrine as an exception to the general rule of suppression.

The New Jersey Supreme Court has embraced this limitation on the reach of the exclusionary remedy. See State v. Alessi, 240 N.J 501, 524 (2020); State v. Williams, 192 N.J. 1, 15 (2007). In determining whether the attenuation doctrine applies, we examine three factors: "(1) the temporal proximity between the illegal conduct and the challenged evidence; (2) the presence of intervening circumstances; and (3) the flagrancy and purpose of the police misconduct." Williams, 192 N.J. at 15 (quoting State v. Johnson, 118 N.J. 639, 653 (1990)).

We believe all three attenuation factors militate against applying the exclusionary rule to the evidence found in defendant's home. With respect to temporal proximity, the issuance of the anticipatory search warrant and ensuing

search of defendant's residence occurred four months after the USPS opened the May package. We view that time period to be substantial.

During that protracted interval, there were numerous intervening events. Fifteen suspicious packages weighing between sixteen and forty-two pounds were shipped from Los Angeles to defendant's residence. Furthermore, a trained narcotics detection canine alerted to the package that was the subject of the controlled delivery. The dog's positive alert is an especially significant intervening circumstance because it independently established probable cause to believe the package addressed to defendant's wife at their shared residence contained CDS. See Florida v. Royer, 460 U.S. 491, 506 (1983) (noting that had police used a trained dog to sniff the defendant's luggage, "a positive result would have resulted in his justifiable arrest on probable cause.").

Finally, we do not view the conduct by the USPS in searching the May package to be flagrant. As we have noted, the State maintains the package was opened because it was damaged in transit. Although we assume for purposes of this appeal that the warrantless inspection was unlawful, we do not conclusively determine this issue one way or another. See Part II, n. 2, supra. It thus is conceivable that the USPS did not violate the Fourth Amendment at all, much less in a flagrant fashion. We deem it important that the USPS did not repeat

the presumably unlawful conduct with respect to the numerous other parcels that fit the drug distribution profile. Fifteen such packages were addressed to defendant's residence. None of them were opened without a warrant. We therefore view the warrantless search of the May package to be an isolated transgression and deem that conduct to be "more casual than calculating" for purposes of the attenuation doctrine. State v. Worlock, 117 N.J. 596, 624 (1990).

## III.

We next address defendant's contention he was entitled to a Franks hearing to contest statements in the affidavit in support of the anticipatory search warrant. The United States Supreme Court has held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.
>
> [Franks, 438 U.S. at 155.]

Our Supreme Court embraced the Franks standard in State v. Howery, 80 N.J. 563 (1979). The Court in Howery emphasized a "defendant cannot rely on unintentional falsification in a warrant affidavit. He must allege 'deliberate

falsehood or reckless disregard for the truth[.]'"  80 N.J at 567 (quoting Franks, 438 U.S. at 171).  A defendant's request for a Franks hearing, moreover, must be supported by proof to reliably establish an intentional falsehood or material omission.  State v. Stelzner, 257 N.J. Super. 219, 235 (App. Div. 1992) (citing Franks, 438 U.S. at 171).

In this instance, defendant claims he is entitled to a Franks hearing because the affidavit in support of the warrant application failed to mention that the May package had been opened without a warrant.  That allegation is insufficient.  The search warrant application process is not the appropriate forum for a judge to determine whether a prior search was unconstitutional.  Furthermore, the search warrant affiant relied on information that was provided to the BCPO Task Force by the USPS.  The record indicates the search warrant affiant did not know why or under what circumstances the May package was opened.  The postal inspector's report upon which the affiant relied noted only that the parcel "was opened" and "contained a large stereo speaker which held 8.5 pounds of marijuana."

Furthermore, the affiant's failure to mention that the May package had been opened without a warrant was not a "material omission" needed to require a Franks hearing.  Stelzner, 227 N.J. Super. at 235.  As the United States

21

Supreme Court explained in Franks, "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." 438 U.S. at 171–72. As we noted in our discussion of the attenuation doctrine, if information about the May package were to be excised entirely from the warrant application, the remaining information in the affidavit would still provide ample probable cause to support issuing an anticipatory search warrant. Notably, the positive drug detection canine alert to the controlled delivery package provided probable cause to search the house in the event defendant accepted delivery. See Ulrich, 265 N.J. Super. at 575 (noting that "[t]he fact that the contraband is physically in the custody of the authorities who can control the time and method of its delivery ordinarily provides . . . the requisite strong probability that the contraband will be on the premises to be searched when the warrant is to be executed."). In these circumstances, we conclude the trial court properly denied defendant's request for a Franks hearing.

IV.

Finally, we address defendant's contention that his sentence was excessive. Sentencing determinations are entitled to deference. State v. Fuentes, 217 N.J. 57, 70 (2014).

22

> The appellate court must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364–65 (1984)).]

Furthermore, "[a] sentence imposed pursuant to a plea agreement is presumed to be reasonable because a defendant '[waived] . . . his right to a trial in return for the reduction or dismissal of certain charges, recommendations as sentence and the like.'" Id. at 70–71 (alteration in original) (quoting State v. Davis, 175 N.J. Super. 130, 140 (App. Div. 1980)).

In this instance, the State agreed to dismiss five charges in exchange for defendant's guilty plea, including endangering the welfare of a child. The State also agreed to recommend a twelve-year sentence with a three-year period of parole ineligibility. The prosecutor's recommendation was near the bottom of the ordinary sentencing range for a first-degree crime, which is ten to twenty years. N.J.S.A. 2C:43-6(a)(1). The plea agreement, moreover, expressly allowed defendant to argue for an even lower sentence.

The State's plea offer was very favorable to defendant, especially considering his previous conviction for a drug distribution offense. By virtue of that prior conviction, defendant would automatically have been subject to an extended term of imprisonment pursuant to N.J.S.A. 2C:43-6(f), exposing him to a prison term ranging from twenty years to life imprisonment. N.J.S.A. 2C:43-7(a)(2).

The sentencing court considered but ultimately rejected defense counsel's request to sentence defendant at the bottom of the first-degree sentencing range. In doing so, the court carefully considered the applicable aggravating and mitigating factors. Specifically, the court found aggravating factor three, N.J.S.A. 2C:44-1(a)(3) (the risk defendant would commit another offense), aggravating factor six, N.J.S.A. 2C:44-1(a)(6) (the extent of the defendant's criminal history), and aggravating factor nine, N.J.S.A. 2C:44-1(a)(9) (the need for deterring the defendant and others from violating the law). The court also found mitigating factor eleven, N.J.S.A. 2C:44-1(b)(11) (imprisonment would entail excessive hardship to defendant or his dependents) because defendant had a newborn child. The court found the aggravating factors outweighed the mitigating factor.

A-1034-19T1

After carefully reviewing the record in light of the deferential standard of appellate review, we conclude that the imposition of a twelve-year prison term with a three-year period of parole ineligibility was neither unreasonable nor shocking to the judicial conscience. Fuentes, 217 N.J. at 70.

To the extent we have not addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION