796 A.2d 226

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
JOHN E. BRUNS, DEFENDANT–RESPONDENT.

Argued January 3, 2002—Decided May 9, 2002.

42

*Thomas M. Cannavo,* Assistant Prosecutor, argued the cause for appellant (*E. David Millard,* Ocean County Prosecutor, attorney).

*Michael B. Jones,* Assistant Deputy Public Defender, argued the cause for respondent (*Peter A. Garcia,* Acting Public Defender, attorney).

*Bennett A. Barlyn,* Deputy Attorney General, argued the cause for amicus curiae, Attorney General of New Jersey (*John J. Farmer, Jr.,* Attorney General, attorney).

The opinion of the Court was delivered by

STEIN, J.

The primary questions in this appeal relate to the warrantless search that revealed evidence implicating defendant John Bruns in a crime. The Law Division denied defendant's motion to suppress the evidence seized from a motor vehicle that connected him to an armed robbery for which he subsequently was convicted. The Appellate Division reversed, suppressing the evidence in reliance on the principles set forth by this Court in *State v. Pierce,* 136 *N.J.* 184, 208–09, 642 *A.*2d 947 (1994). We granted the State's petition for certification, 169 *N.J.* 607, 782 *A.*2d 425 (2001), and now reinstate defendant's conviction. We agree with the State that the *Pierce* issue need not be considered because defendant lacked standing to bring a motion to suppress the evidence obtained in the allegedly unlawful search and seizure.

I

The facts of the case essentially are undisputed. In the early morning hours of July 27, 1997, Officer John Seidler stopped a vehicle for speeding in Lakewood Township. After effectuating the stop, Seidler approached the vehicle and observed a temporary registration tag that was due to expire on July 30, 1997. The tag listed Barbara Edwards as the owner. When first asked by Seidler, the driver said her name was Lynette Edwards. Because he had observed the name Barbara Edwards on the registration tag Seidler again asked her name. This time she replied that her name was Barbara Edwards (Edwards).

After Edwards was unable to produce a driver's license, Seidler ran a Department of Motor Vehicles computer check and found that her license was suspended. In addition, the computer listed an outstanding arrest warrant for Edwards from the Lakewood Municipal Court for a motor vehicle offense, and another outstanding warrant for Edwards from the Ocean County Superior Court for failure to appear on a violation of probation. Based on the outstanding warrants, Seidler placed Edwards under arrest, handcuffed her, searched her, and seated her in his patrol car.

Seidler next asked the sole passenger in the vehicle, Walter Evans (Evans), to step out of the car. Officer Regan, who had been called to the scene as backup, placed Evans in his patrol car. Seidler conducted a search of the passenger compartment after Evans exited the vehicle. He found a handgun and a large knife under the front passenger seat. The object that appeared to be a handgun was later determined to be a toy handgun.

After taking Edwards to the police station and processing her, Seidler placed the knife and toy handgun in his locker. He made no report of finding the items until three months later when he discovered that the Ocean County Prosecutor's Office and the Lakewood Police Department were investigating an armed robbery that occurred on or about July 20, 1997, seven days prior to the stop and search of Edwards' vehicle, and that possibly involved Evans and defendant.

Seidler testified that he arrested Edwards based on the arrest warrants, and not on the basis of the motor vehicle charges for speeding and driving with a suspended license. Moreover, he testified that he searched the vehicle because he had arrested one of its occupants. Seidler acknowledged that, aside from the outstanding arrest warrants, he had no probable cause to believe that Edwards, Evans, or the vehicle were involved in illegal activity. In addition, Seidler stated that neither Edwards nor Evans made any furtive movements that made him suspicious and that the vehicle was parked in a safe and secure position after the stop. He also testified that although Evans was free to leave after

he searched the vehicle, Evans could not drive Edwards' car because he did not have a valid driver's license.

In his subsequent trial for armed robbery defendant made a motion to suppress the evidence seized during the search of Edwards' car, alleging that Seidler's search of the vehicle and seizure of the toy handgun and knife were unlawful. The motion judge concluded that the search was incident to Edwards' lawful arrest and that "the steps that the officers took were necessary given the particular circumstances."

In an unreported opinion the Appellate Division reversed the trial court's decision denying defendant's motion to suppress. The court relied on *Pierce, supra,* 136 *N.J.* at 210, 642 *A.*2d 947, in which this Court rejected the rule adopted by the United States Supreme Court in *New York v. Belton,* 453 *U.S.* 454, 101 *S.Ct.* 2860, 69 *L.Ed.*2d 768 (1981), that "authorize[s] vehicular searches indiscriminately based only on contemporaneous arrests for motor vehicle violations." The court acknowledged that this case was distinguishable from *Pierce* because Edwards' arrest was based not on motor vehicle violations but rather on the existence of two outstanding arrest warrants. Nonetheless, the court found that the search did not fall into one of the recognized exceptions to the warrant requirement because Seidler did not have probable cause to believe that the vehicle contained contraband or evidence of a crime, or that he reasonably believed that Edwards or Evans posed a danger to the officers. Therefore, the court concluded that the *Belton* rule could not sustain the vehicle search.

II

The State argues that defendant did not have a proprietary, possessory, or participatory interest in the vehicle searched or the evidence retrieved from it. Therefore, it asserts that defendant did not have standing to move to suppress the evidence seized and that the Appellate Division should not have reached the issue whether the search was illegal.

## A

In order to contest at trial the admission of evidence obtained by a search or seizure, a defendant must first demonstrate that he has standing. Generally speaking, that requires a court to inquire whether defendant has interests that are substantial enough to qualify him as a person aggrieved by the allegedly unlawful search and seizure. *Jones v. United States*, 362 *U.S.* 257, 261, 80 *S.Ct.* 725, 731, 4 *L. Ed.*2d 697, 703 (1960). *See also* Fed.R.Crim.P. 41(e) ("A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property that was illegal seized.").

In *Rakas v. Illinois*, 439 *U.S.* 128, 143, 99 *S.Ct.* 421, 430, 58 *L. Ed.*2d 387, 401 (1978), the United States Supreme Court held that a defendant must have a legitimate expectation of privacy in the place searched or items seized to establish Fourth Amendment standing. In *State v. Alston*, 88 *N.J.* 211, 440 *A.*2d 1311 (1981), this Court established a broader standard to determine when a defendant has the right to challenge an illegal search or seizure, rejecting the line of United States Supreme Court cases culminating with *Rakas v. Illinois* that effectively resolved standing issues only on the basis of a defendant's expectations of privacy. Instead, before reaching the substantive question whether a defendant has a reasonable expectation of privacy, our courts first determine whether that defendant has a proprietary, possessory or participatory interest in the place searched or items seized. *Alston, supra,* 88 *N.J.* at 228, 440 *A.*2d 1311.

For the twenty years preceding the United States Supreme Court's adoption of the "legitimate expectation of privacy" standard the leading Fourth Amendment standing case was *Jones v. United States, supra,* 362 *U.S.* 257, 80 *S.Ct.* 725, 4 *L. Ed.*2d 697. In *Jones,* the defendant was arrested for the possession and sale of narcotics after federal officers executed a search warrant for narcotics in an apartment in which the defendant was present. The Court rejected the Government's contention that the defen-

dant lacked standing because he did not claim either ownership of the seized narcotics or a property interest in the apartment, but rather was simply a guest in the apartment. Recognizing the predicament a defendant faces when attempting to establish Fourth Amendment standing by demonstrating that he owned or possessed the seized property while at the same time defending against a charge in which an essential element is possession, the Court adopted the so-called "automatic standing rule." The Court found that the prosecution

> subjected the defendant to the penalties meted out to one in lawless possession while refusing him the remedies designed for one in that situation. It is not consonant with the amenities, to put it mildly, of the administration of criminal justice to sanction such squarely contradictory assertions of power by the Government.

[*Id.* at 263–64, 80 *S.Ct.* at 732, 4 *L.Ed.*2d at 704.]

Therefore, the Court concluded that the allegations of possession that led eventually to defendant's conviction afforded him sufficient standing to challenge the search. In addition, acknowledging that the interests of law enforcement would not "be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him," the Court concluded that his friend's consent to his presence also gave defendant sufficient standing to challenge the search under the Fourth Amendment. *Id.* at 267, 80 *S.Ct.* at 734, 4 *L.Ed.*2d at 706. That portion of the *Jones* holding became known as the "legitimately on the premises test."

In *Alderman v. United States,* 394 *U.S.* 165, 171, 89 *S.Ct.* 961, 965, 22 *L. Ed.*2d 176, 185 (1969), the defendants argued that a retrial was necessary if the Court determined that the evidence used to convict them of conspiring to transmit murderous threats in interstate commerce was the result of unauthorized electronic surveillance, "regardless of whose Fourth Amendment rights the surveillance violated." The defendants asserted that if the evidence was inadmissible against their co-defendants it also should be inadmissible against them. At least one of the defendants making that argument was neither on the premises during the

electronic surveillance nor a party to the taped conversations that were seized. The Court rejected the defendants' arguments and "adhere[d] . . . to the general rule that Fourth Amendment rights are personal rights which, unlike some other constitutional rights, may not be vicariously asserted." *Id.* at 174, 89 *S.Ct.* at 966–67, 22 *L.Ed.*2d at 187. Rejecting the contention that a defendant not on the premises nor a party to the taped conversations had standing to challenge admissibility of the evidence the Court observed:

> What petitioners appear to assert is an independent constitutional right of their own to exclude relevant and probative evidence because it was seized from another in violation of the Fourth Amendment. But we think there is a substantial difference for constitutional purposes between preventing the incrimination of a defendant through the very evidence illegally seized from him and suppressing evidence on the motion of a party who cannot claim this predicate for exclusion.
>
> [*Id.* at 174, 89 *S.Ct.* at 967, 22 *L.Ed.*2d at 187.]

In *Rakas v. Illinois, supra,* 439 *U.S.* 128, 99 *S.Ct.* 421, 58 *L. Ed.*2d 387, a case relied on by the State in *Alston, supra,* the defendants argued that *any* person who was a "target" of a search should have standing to object to the search. Reaffirming the principle that Fourth Amendment rights cannot be vicariously asserted, the Court rejected the defendants' argument and took the opportunity to consider whether it was necessary to analyze the initial matter of standing separate and apart from the substantive Fourth Amendment claim. The Court concluded:

> Rigorous application of the principle that the rights secured by this Amendment are personal, in place of a notion of "standing," will produce no additional situations in which evidence must be excluded. The inquiry under either approach is the same. *But we think the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment,* rather than any theoretically separate, but invariably intertwined concept of standing.
>
> [*Id.* at 139, 99 *S.Ct.* at 429, 58 *L.Ed.*2d at 398 (emphasis added).]

The Court in *Rakas* also considered the appropriate scope of the interest protected by the Fourth Amendment. It determined that the "legitimately on the premises" standard applied in *Jones* was too broad, and instead adopted the standard established in *Katz v. United States,* 389 *U.S.* 347, 88 *S.Ct.* 507, 19 *L. Ed.*2d 576 (1967), stating that a defendant must have a *"legitimate expectation of privacy in the invaded place." Id.* at 143, 99 *S.Ct.* at 430, 58

*L.Ed.*2d at 401 (emphasis added). Based on that standard the Court held that the defendants had failed to demonstrate that they had a legitimate expectation of privacy in the glove compartment or the area under the front seat of the car in which they were passengers.

In *United States v. Salvucci,* 448 *U.S.* 83, 100 *S.Ct.* 2547, 65 *L. Ed.*2d 619 (1980), shortly after its decision in *Rakas,* the Court also abolished the "automatic standing" rule of *Jones* and held that defendants who are charged with crimes that have an element of possession can invoke the exclusionary rule only if their own Fourth Amendment rights have in fact been violated. The defendants in *Salvucci* were charged with unlawful possession of stolen mail, and relied solely on the *Jones* automatic standing rule without asserting that they had a legitimate expectation of privacy in the place where the stolen mail was seized. In assessing the trial court's decision to suppress the evidence the Court concluded:

We are convinced that the automatic standing rule of *Jones* has outlived its usefulness in the Court's Fourth Amendment jurisprudence. The doctrine now serves only to afford a windfall to defendants whose Fourth Amendment rights have not been violated. We are unwilling to tolerate the exclusion of probative evidence under such circumstances since we adhere to the view of *Alderman* that the values of the Fourth Amendment are preserved by a rule which limits the exclusionary rule to defendants who have been subjected to a violation of their Fourth Amendment rights.

[*Id.* at 95, 100 *S.Ct.* at 2554, 65 *L.Ed.*2d at 630.]

In *Rawlings v. Kentucky,* 448 *U.S.* 98, 100 *S.Ct.* 2556, 65 *L. Ed.*2d 633 (1980), the companion case to *Salvucci,* the Court addressed an argument by the defendant that his ownership of drugs seized by the police entitled him to invoke his Fourth Amendment rights although he claimed no expectation of privacy in the area from which the drugs were seized. The Court rejected defendant's argument, relying on the Court's observation in *Rakas, supra,* that "arcane" concepts of property law should not control the analysis of Fourth Amendment standing. *Id.* at 105, 100 *S.Ct.* at 2562, 65 *L.Ed.*2d at 642. The Court noted that although the defendant owned the drugs he would not have been able to claim any legitimate expectation of privacy if they had

been in plain view. The Court also explained that prior to *Rakas* the defendant "might have been given 'standing' in such a case to challenge a 'search' that netted those drugs but probably would have lost his claim on the merits. After *Rakas,* the two inquiries merge into one: whether governmental officials violated any legitimate expectation of privacy." *Id.* at 106, 100 *S.Ct.* at 2562, 65 *L.Ed.*2d at 642.

Concluding that the United States Supreme Court's decisions such as *Rakas, Salvucci,* and *Rawlings* insufficiently guarded against unreasonable searches and seizures, this Court's decision in *Alston, supra,* 88 *N.J.* 211, 440 *A.*2d 1311, applied Article I, paragraph 7 of the New Jersey State Constitution to the standing issue in order to afford our citizens greater protection. We previously have observed that "the search and seizure provisions in the federal and New Jersey Constitutions are not always coterminous, despite the congruity of the language." *State v. Hunt,* 91 *N.J.* 338, 344, 450 *A.*2d 952 (1982). The more protective approach adopted by this Court was based on the belief that

[a]dherence to the vague "legitimate expectation of privacy" standard, subject as it is to the potential for inconsistent and capricious application, will in many instances produce results contrary to commonly held and accepted expectations of privacy. Moreover, we are concerned that the results thus attained will not infrequently run contrary to a fundamental principle rooted in Article I, paragraph 7 of the New Jersey Constitution. That paragraph protects "the right of the people to be secure in their persons, house, papers and effects, against unreasonable searches and seizures."

[*Alston, supra,* 88 *N.J.* at 226, 440 *A.*2d 1311 (citations omitted)].

In *Alston* four defendants charged with the unlawful carrying and possession of weapons moved to suppress the weapons seized as the result of the warrantless search of the vehicle in which they were the driver and passengers. The State argued that the passengers had no standing to challenge the search because they had no ownership interest in the vehicle, and that the driver legitimately possessed the car but lacked a reasonable expectation of privacy in the areas of the vehicle that were searched. The Court rejected the State's arguments, finding that the privacy interests protected by the federal constitution and our State

Constitution "flow from some connection with or relation to the place or property searched" and that "it serves the purposes of clarity to emphasize an accused's relationship to property rather than to attempt a definition of expectations in terms of the person." *Id.* at 227–28, 440 *A.*2d 1311. Accordingly, we reiterated our traditional standing rule that requires a defendant to show that "he has a proprietary, possessory, or participatory interest in either the place searched or the property seized," and found that the automatic standing rule conferred standing on all four defendants. *Id.* at 228, 440 *A.*2d 1311.

In *State v. Mollica*, 114 *N.J.* 329, 554 *A.*2d 1315 (1989), we elaborated on the participatory interest portion of our standing rule. Defendants Mollica and Ferrone were charged with various gambling offenses after the state police discovered bookmaking paraphernalia in their hotel rooms. The warrants to search the rooms were based in part on the telephone records for Ferrone's hotel room that the Federal Bureau of Investigation (FBI) had previously obtained without a warrant as part of its own bookmaking investigation. The State argued that Mollica had no standing to object to the seizure of Ferrone's telephone records even though those records provided the basis for a search warrant that included his hotel room. The Court acknowledged that our standing rule does not automatically provide a defendant charged with a possessory crime "standing to object to prior or antecedent state action that was directed against another person," *id.* at 338, 554 *A.*2d 1315, and observed that Mollica's standing to object to the search and seizure of evidence found in his hotel room did not necessarily give him standing to object to the seizure of Ferrone's telephone records. Nonetheless, the Court considered whether Mollica had a participatory interest in the seized telephone records, noting that a participatory interest "stresses the relationship of the evidence to the underlying criminal activity and defendant's own criminal role in the generation and use of such evidence," and confers standing on a person who "had some culpable role, whether as a principal, conspirator, or accomplice, in a criminal activity that itself generated the evidence." *Id.* at 339–40, 554 *A.*2d 1315.

Based on the State's allegation that Mollica participated in illegal bookmaking that included the use of Ferrone's hotel room telephone and resulted in the generation of the telephone records in question, the Court concluded that

[t]here is thus sufficient connection between the telephone toll records and the underlying criminal gambling for which this defendant is charged, and a sufficient relationship between the defendant and the gambling enterprise, to establish a participatory interest on the part of defendant in this evidence. In sum, the involvement of defendant in criminal gambling activities that generated telephone toll records invests defendant with standing to challenge the validity of the seizure of this evidence.

[*Id.* at 340, 554 *A.*2d 1315.]

In only two subsequent cases have we had occasion to apply the principles underlying our decision in *Alston*. In *State v. Curry*, 109 *N.J.* 1, 532 *A.*2d 721 (1987), we considered whether our state's standing rule would apply in determining whether defendants, who were charged with gambling, theft by deception and conspiracy, had standing to challenge the admissibility of business records regarding a pyramid gambling scheme that were seized by Illinois authorities. The lead defendants' standing was unquestioned because they were both charged with criminal possession of the gambling records and each of them had a proprietary interest in the places searched. However, the trial court also allowed other defendants to join the motion to suppress the evidence based on their "varying relationships with the goods seized." *Id.* at 9, 532 *A.*2d 721. In analyzing whether the trial court correctly found that the defendants had standing, we expanded on the principles expressed in *Alston:*

Whether in a particular case a defendant should be permitted to object to the use of illegally obtained evidence in a criminal trial will depend, then, on the particular factual circumstances in which the issue arises. In reality, the federal concept of a legitimate expectation of privacy cannot be divorced from its "nexus with the property searched or seized."

[*Id.* at 8, 532 *A.*2d 721.]

Although recognizing that the facts were "complicated by the tangled web of relationships among the defendants," we concluded that the trial court did not err in its holding on standing. *Ibid.* We also ruled that notwithstanding any deficiency in the affidavit

supporting the Illinois search warrant or in the voluntariness of the consent to search, the bulk of the evidence seized, constituting discoverable business records, was admissible under the "independent source" rule. *Id.* at 14–15, 532 *A.*2d 721. However, without purporting to rule on the admissibility of each item of evidence seized, we noted that *"[a]s the nexus between property and the individual defendants becomes so attenuated as to eliminate standing,* such evidence may also become irrelevant or inadmissible." *Id.* at 10, 532 *A.*2d 721.

In *State v. Arthur,* 149 *N.J.* 1, 691 *A.*2d 808 (1997), although decided on different grounds, we addressed the potential boundaries of our broad rule of standing. During a narcotics surveillance the police observed a woman get into the defendant's parked car while he was sitting in it and exit the car several minutes later with a brown paper bag under her arm. The police stopped the woman and found empty cocaine vials in the paper bag. Based on that information the defendant's car was subsequently pulled over. The Appellate Division found that defendant had standing to object to the search of the bag and of the woman who removed it from his car. We declined to address the standing issue because it was not necessary in determining whether the police had the authority to stop the defendant. However, we noted that

> in view of the Appellate Division's perception that the events were interconnected and that defendant had standing to challenge the search of the passenger, it is appropriate to note certain considerations that bear on the issue of standing in the context of this case. Although *State v. Alston* and *State v. Mollica* established a broad standing rule, *those decisions did not address the standing requirement in cases in which a defendant clearly had abandoned or relinquished his possessory interest in the property being seized or in which his participatory interest in that property had become very remote or attenuated at the time of the seizure.*
> [*Id.* at 12–13, 691 A.2d 808 (emphasis added).]

In general, following the decisions in *Alston* and *Mollica* our courts have applied a broad rule of standing. See *e.g. State v. Arias,* 283 *N.J.Super.* 269, 661 *A.*2d 850 (Law Div.1992)(finding murder defendant had standing to challenge admission of evidence seized from victims' residence after police apprehended him); *State v. Ford,* 278 *N.J.Super.* 351, 354, 651 *A.*2d 103

(App.Div.1995)(stating that standing of defendants charged with possession of narcotics and intent to distribute narcotics was "unquestioned" under *Alston* where police seized cocaine from exterior portion of house after observing defendants retrieve small plastic bags from same area); *State v. Smith*, 291 *N.J.Super.* 245, 261, 677 *A.2d* 250 (App.Div.1996), *rev'd on other grounds*, 155 *N.J.* 83, 713 *A.2d* 1033 (1998)(recognizing that defendant's possessory interest in drugs seized provided standing to challenge legality of search of apartment into which defendant "unlawfully and forcibly gained entry"); *State v. Harris*, 298 *N.J.Super.* 478, 484, 689 *A.2d* 846 (App.Div.1997)(applying participatory interest portion of standing rule to hold that defendant had standing to challenge seizure of taped conversation between defendant and alleged co-conspirator retrieved from co-conspirator's apartment after murder); *State v. De La Paz*, 337 *N.J.Super.* 181, 194 (2001)(holding that "defendant's charged possession offenses, as well as his participatory interest in the evidence seized, unquestionably confer [ ] standing to challenge the officers' actions" where police observed defendant packaging narcotics through an open window and then seized evidence after making warrantless entry into house).

Although our standing rule is broader than that of the federal courts, federal court decisions addressing suppression issues in contexts generally analogous to the facts in this record are illuminating. *See, e.g., United States v. Banks*, 465 *F*.2d 1235, 1240 (5th Cir.1972)(finding no standing to suppress evidence implicating defendant in counterfeiting scheme where defendant did not purchase counterfeiting equipment, did not own house searched and was not present when search took place regardless of fact that "search was directed at a person charged with the same crime or allegedly connected with the same crime"); *United States v. Lisk*, 522 *F*.2d 228 (7th Cir.1975)(finding no standing to suppress firearm seized from trunk of third party's vehicle where defendant was not in vehicle at any time on day firearm was seized and where search of third party's vehicle was not directed at defendant); *United States v. Zabalaga*, 834 *F*.2d 1062

(D.C.Cir.1987)(finding no standing to suppress evidence uncovered in trunk of rental car where defendant failed to assert possessory or proprietary interest in vehicle or items stored in it and where there was no evidence that defendant had driven car or had permission to drive it); *United States v. Payne,* 119 *F.*3d 637, 641 (8th Cir.1997)(finding that defendant had no standing to object to warrantless vehicle searches where defendant was unable to show a "sufficiently close connection" to co-defendant's vehicle or to suitcase found in trunk of another co-defendant's vehicle).

In *United States v. Smith,* 621 *F.*2d 483 (2d Cir.1980), defendants Smith and Cannon, who were convicted of conspiracy to commit bank robbery, armed bank robbery, and unarmed bank robbery, challenged the admission of evidence seized during a warrantless automobile inventory search. Nine days after a New York robbery took place Smith was arrested in Maryland for speeding and driving without a license. Approximately one week later Smith was arrested again for driving without a license. After the arresting officer observed a brown envelope containing marijuana on the floor by the front passenger seat, Smith's companion also was arrested and both men were charged with marijuana possession. Because both men were taken to the police station the contents of the trunk and glove compartment were removed and placed in inventory. Several items found in the trunk of the vehicle implicated Smith and Cannon in the New York robbery that had taken place over two weeks earlier.

Without asserting any possessory or ownership interest in the vehicle or items seized from it, both defendants moved to suppress the evidence obtained in the inventory search. The trial court denied the defendants' motion to suppress. On appeal, Cannon argued that although he had no proprietary or possessory interest in the vehicle, he had standing to object to the search "because he was the person 'against whom the search was directed.'" *Id.* at 486 (quoting *Jones v. United States,* 362 *U.S.* 257, 261, 80 *S.Ct.* 725, 731, 4 *L. Ed.*2d 697 (1960)). The Second Circuit relied on *Rakas, supra,* 439 *U.S.* 128, 99 *S.Ct.* 421, 58 *L. Ed.*2d 387, to hold

that neither Smith nor Cannon had standing because neither of them had a legitimate expectation of privacy in the trunk of the vehicle. With regard to Cannon's standing, the court noted that "Cannon was nowhere near the scene when the car was stopped, and did not control access to the trunk in any way." *Id.* at 487. Moreover, "Cannon's only connection with the car is that he may have been the owner of the sneakers and other property found in some containers in the trunk." *Id.* at 487–88.

### III

We see no reason to depart from the broad standing rule that entitles a criminal defendant to challenge an unreasonable search and seizure under Article I, paragraph 7 of the New Jersey Constitution if he or she can demonstrate a proprietary, possessory, or participatory interest in the place searched or items seized. *Alston, supra,* 88 *N.J.* at 228, 440 *A.*2d 1311. Nonetheless, applying that standard to the facts of this case we find that defendant has failed to demonstrate an interest sufficient to give him standing. In reaching that conclusion, we need not specifically "delineate the contours of the interest in [ ] evidence seized that will justify standing," *Curry, supra,* 109 *N.J.* at 8, 532 *A.*2d 721. Defendant's alleged connection to the place searched and items seized simply is far too attenuated to support a constitutional right to object to the search and seizure.

To begin with, based on the record before us defendant cannot claim a proprietary or possessory interest in the vehicle that was searched. During the suppression hearing defense counsel made a vague claim that Edwards had at one point indicated that the vehicle belonged to Bruns. However, the claim was never substantiated and the record confirms that the vehicle was registered in Edwards' name at the time of the search.

Moreover, defendant has failed to demonstrate either an ownership or possessory interest in the weapons seized. We note defense counsel's assertion that there is no reason to believe defendant divested himself of any possessory interest in the

weapons, and his hypothetical statement that "[f]or all we know, Mr. Bruns placed the toy gun under the seat ten minutes before the car was stopped and asked those in the car to keep a close watch on it." However, the record contains no evidence whatsoever to support the contention that defendant retained any interest in the weapons at the time of the search. See *Zabalaga, supra,* 834 *F*.2d at 1065 (finding no standing where defendant failed to assert a possessory interest in the vehicle searched during his initial arrest or during subsequent questioning). See also *Payne, supra,* 119 *F*.3d at 641 (finding no standing where defendant failed to assert ownership in vehicle searched and provided no evidence to show that he had ever possessed or driven the vehicle).

■ With no proprietary or possessory interest established, defendant nevertheless asserts that he had a participatory interest in the weapons seized because they were used to commit the robbery for which he was charged. We note first that the toy handgun and knife seized from Edwards' vehicle implicated defendant and Evans in a robbery that took place seven days before the contested search. The evidence was seized as a result of the search incident to Edwards' arrest that occurred after she was pulled over for speeding and a police officer discovered that there were two outstanding warrants for her arrest. Moreover, defendant was not a passenger in the vehicle and he was not in the vicinity of the vehicle at the time it was searched. In *Mollica,* the only case in which we have had occasion to consider whether a defendant's participatory interest was sufficient to confer standing, the Court emphasized the relationship between the evidence seized and the underlying criminal activity with which the defendant was charged, as well as the extent to which a co-defendant played a role in generating and using that evidence. *Mollica, supra,* 114 *N.J.* at 340, 554 *A*.2d 1315.

Defendant points to the relationship between the weapons seized from Edwards' car and the crime with which he was charged. Accepting that generalized connection, however, we are unpersuaded that that connection is adequate to confer standing

based on a participatory interest. That evidence implicates a defendant in a crime is not, in and of itself, sufficient to confer standing. There also must be at a minimum some contemporary connection between the defendant and the place searched or the items seized. Despite our broad standing rule, we acknowledge the soundness of the general principle that "suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." *Alderman, supra,* 394 *U.S.* at 171–72, 89 *S.Ct.* at 965, 22 *L. Ed.*2d at 185–86.

The facts of this case are comparable to the facts in *United States v. Smith, supra,* 621 *F.*2d 483, where the defendant sought to base his Fourth Amendment standing on similarly attenuated circumstances. In *Smith,* defendant Cannon moved to suppress evidence found in the trunk of a car driven by co-defendant Smith two weeks after the two men committed a robbery together, which evidence implicated Cannon in the robbery. Cannon did not attempt to demonstrate an ongoing criminal relationship. Rather, he simply asserted that the fact that the search was "directed at him" gave him standing to object. As pointed out by the court in *Smith,* Cannon "was nowhere near the car" at the time of the search and his "only connection with the car is that he may have been the owner" of the evidence found in the trunk. *Id.* at 488.

Likewise, the weapons seized in this matter did not relate to any ongoing criminal activity between Edwards and defendant, or between Evans and defendant, at the time the allegedly illegal search occurred. The robbery for which defendant was charged occurred seven days before the items were found in Edwards' vehicle. Moreover, nothing in the record suggests that defendant had a continuing criminal relationship with Evans at the time the weapons were seized. Despite defense counsel's hypothetical assertion to the contrary, defendant offered no evidence demonstrating that he handed the weapons over to Evans for safekeeping.

■ Although we recognize that in most cases in which the police seize evidence implicating a defendant in a crime that defendant will be able to establish an interest in the property seized or place searched, our broad standing rule necessarily has limits. If substantial time passes between the crime and the seizure of the evidence, and a proprietary connection between defendant and the evidence no longer exists, the defendant's basis for being aggrieved by the search will have diminished. In addition to the temporal aspects of a specific search or seizure, a showing that the search was not directed at the defendant or at someone who is connected to the crime for which he has been charged also will diminish a defendant's interest in the property searched or seized. See *Smith, supra*, 621 *F*.2d 483 (finding no standing where defendant was objecting to search undertaken for reasons completely unrelated to his alleged criminal activity).

We are satisfied that on this record the passage of seven days between the crime and the seizure of the evidence, defendant's lack of any physical proximity to the evidence when it was seized, as well as the lack of any connection between defendant and the events leading to the initial motor vehicle stop or the arrest that eventually resulted in the search of the vehicle preclude him from having standing to challenge the vehicle search.

IV

In view of our conclusion that defendant lacks standing to challenge the search and seizure, we need not consider the other substantive issues raised in this appeal. Accordingly, we reverse the judgment of the Appellate Division and reinstate defendant's conviction.

*For reversal and reinstatement*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA, and ZAZZALI—7.

*Opposed*—None.