**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3919-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JIMMY M. CORREA, a/k/a
JIMMY MAURICE CORREA,
and JAMES CORREA,

     Defendant-Appellant.

_____

Argued March 12, 2025 – Decided July 29, 2025

Before Judges Mayer, Rose and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 18-12-0195.

Rachel Glanz, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Rachel Glanz, of counsel and on the briefs).

Thomas M. Caroccia, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Thomas M. Caroccia, of counsel and on the brief).

PER CURIAM

Following a three-month narcotics investigation by detectives assigned to the State Police Trafficking Central Unit (TCU), defendant Jimmy Correa was charged in an eighteen-count State indictment with Douglas Watson and Wellington Moya. Pertinent to this appeal, defendant and Watson were charged with conspiracy and as accomplices on related narcotics and weapons offenses in six counts, and Watson and Moya were charged in a separate conspiracy and as accomplices on related narcotics offenses in five counts.[1] Accordingly, defendant and Moya were not charged in the same conspiracy. Nor were they charged as accomplices in any substantive counts.

After decisions on several pretrial motions,[2] including the denial of his motion to suppress a handgun, heroin, and other contraband seized from his

---

[1] Watson pled guilty to first-degree possession with the intent to distribute heroin, charged in count eleven with defendant, and second-degree possession with the intent to distribute crack-cocaine, charged only against him. Watson was sentenced to an aggregate fifteen-year prison term. Moya pled guilty to first-degree possession with intent to distribute cocaine, charged in count three with Watson. Moya was sentenced to a ten-year prison term. Watson and Moya are not parties to this appeal.

[2] In a March 18, 2020 memorializing order, the judge: granted in part and denied in part defendant's motion to suppress the evidence seized from the warrantless search of his person and vehicle; granted defendant's motion to suppress his statements to police; and granted in part and denied in part

A-3919-22

storage unit pursuant to a search warrant, and Watson's motion to suppress cocaine, heroin, and other contraband seized from Moya's vehicle pursuant to a consent search, defendant pled guilty to first-degree possession with intent to distribute heroin, N.J.S.A. 2C:35-5(a)(1) and (b)(1), and second-degree unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b).[3] Defendant was sentenced to a fourteen-year prison term on his narcotics conviction, imposed concurrently to a five-year prison term with a forty-two-month parole disqualifier, pursuant to the Graves Act, N.J.S.A. 2C:43-6(c), on his firearm conviction.[4]

---

defendant's motion to sever certain counts of the indictment. Defendant does not appeal from the denial of these motions and, as such, they are deemed abandoned. See State v. Huang, 461 N.J. Super. 119, 125 (App. Div. 2018), aff'd o.b., 240 N.J. 56 (2019); Pressler and Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2025).

[3] When providing the factual basis for his firearm conviction defendant stated the handgun "was solely [his]" and not Watson's. Similarly, the factual basis for defendant's drug conviction does not implicate Watson as his accomplice.

[4] Although the appellate record does not contain the Supplemental Plea Form for Graves Act Offenses, the parties did not cite the Graves Act during the plea or sentencing hearings, and the Graves Act is not reflected in the judgment of conviction (JOC), defendant's sentence is consistent with the Graves Act. See N.J.S.A. 2C:43-6(c) (requiring a minimum prison term of "one-half of the sentence imposed by the court or 42 months, whichever is greater" for certain firearm offenses, including N.J.S.A. 2C:39-5(b)).

A-3919-22

On appeal, defendant raises the following points for our consideration:

## POINT I

ALL EVIDENCE SEIZED FROM MOYA'S CAR MUST BE SUPPRESSED BECAUSE POLICE LACKED REASONABLE AND ARTICULABLE SUSPICION TO BELIEVE THAT MOYA WAS ENGAGING IN CRIMINAL ACTIVITY AND THEREFORE HAD NO BASIS TO EFFECTUATE A TRAFFIC STOP.

    A. [Defendant] Has Standing To Challenge The Warrantless Stop Of Moya's Car Because He Has A Participatory Interest In The Narcotics Seized.
[(Partially raised below)]

    B. The Traffic Stop Of Moya Was Not Supported By Reasonable And Articulable Suspicion That Moya Was Engaging In Criminal Activity.
[(Not raised below)]

    C. Because The Narcotics Seized From Moya's Car Were Illegally Obtained, They Cannot Factor Into The Analysis Of Whether There Was Probable Cause To Issue A Search Warrant For The Storage Unit.
[(Not raised below)]

## POINT II

ALL EVIDENCE SEIZED FROM THE STORAGE UNIT MUST BE SUPPRESSED BECAUSE THE SEARCH WARRANT WAS NOT SUPPORTED BY PROBABLE CAUSE.
[(Partially raised below)]

4

We reject these contentions and affirm defendant's convictions. But we sua sponte remand for the limited purposes of correcting the JOC to reflect defendant's sentence on his firearm offense was imposed pursuant to the Graves Act and defendant was not convicted as an accomplice on either offense.

I.

We summarize the pertinent facts and procedural history from the record provided on appeal. In June 2018, TCU detectives arrested Elvisaul Nunez Vasquez on unrelated heroin charges. Nunez Vasquez disclosed defendant was involved in large-scale narcotics distribution between New York and New Jersey. Nunez Vasquez stated defendant stored large quantities of heroin in Unit 126 of a Fair Lawn storage facility and the informant delivered heroin to that unit on multiple occasions.

Subpoenaed records from the storage facility revealed defendant and Watson co-owned Unit 126 and the phone number defendant provided to the storage facility matched the number Nunez Vasquez provided to police. The facility's activity logs indicated Unit 126 was accessed approximately forty times in one month. Surveillance footage depicted defendant driving a Honda Odyssey and Watson driving a Range Rover. Police entered the registrations for both vehicles into a license plate reader system.

A-3919-22

During August 2018, surveillance footage confirmed defendant and Watson accessed the storage unit multiple times within the month, and occasionally, multiple times a day. Law enforcement database searches revealed defendant was arrested twelve times with six convictions in New Jersey, some for narcotics violations.

During surveillance on August 23, 2018, detectives observed defendant arrive at the storage facility in his Honda Odyssey, park, and enter Unit 126, where he remained for "less th[a]n ten minutes." Defendant returned to the Honda and left the facility. Police followed defendant to Paterson and saw him park the vehicle. An unidentified male walked up to the passenger side and "leaned into the Honda with his hands." As police circled the block to gain a better view of the interaction, defendant departed. Based on his training and experience, TCU Detective Taylor Bonner "firmly believe[d] a narcotics hand-to-hand transaction took place."

On August 30, 2018, "an allied law enforcement agency" notified police that Watson's Range Rover drove into New York City around 2:41 p.m., then reentered New Jersey via the George Washington Bridge around 3:29 p.m. Police established surveillance at the storage facility and, approximately thirty minutes later, saw the Range Rover enter the facility, followed closely by a

6

Toyota Camry bearing New York license plates, driven by Moya. Detectives observed Watson enter the keycode to the storage facility. Both vehicles then drove "in close proximity to each other" toward Unit 126. When he saw police stationed near the unit, Watson signaled to Moya to pass Unit 126. Both vehicles drove past the unit toward the exit, where police conducted an investigatory stop of both vehicles.

In response to police questioning, Moya stated he was driving a New York taxicab and had dropped off a passenger in Paterson. Moya claimed he did not know Watson but "could not provide a reason" for his presence at the storage facility. In his search warrant affidavit, Bonner stated Moya "appeared nervous," "his hands were visibly shaking[,] and he continued to lick his lips." Moya gave police consent to search his car. Police searched the Toyota and conducted a canine sniff around the vehicle. The canine positively alerted to the presence of narcotics near the passenger seat. Police seized a bag of cocaine, smaller bags of suspected heroin and cocaine, a digital scale, and other paraphernalia from the seat. Police conducted a consent search of Watson's Range Rover, with negative results. The canine positively alerted to the presence of narcotics outside Unit 126.

A-3919-22

The following day, police executed a warrant to search Unit 126. During the search, police seized a handgun, 337 bricks of heroin, a small amount of marijuana, and paraphernalia. Defendant was arrested on September 17, 2018.

Pertinent to this appeal, after he was indicted, defendant moved to suppress evidence seized from Unit 126 pursuant to the search warrant and for a Franks hearing.[5] We glean from the motion judge's March 5, 2020 oral decision, defendant's arguments were limited to: "the search warrant was [improperly] based on the words of an untested and uncorroborated informant"; "police did not conduct an adequate investigation"; "it's unclear whether the canine actually alerted to the storage unit at 126"; and "police relied on the unverified word of an anonymous allied law enforcement agency." The judge noted defendant contended a Franks hearing was required because Bonner's supporting affidavit neither included Nunez Vasquez's ultimate disposition in the unrelated narcotics case nor "disclose[d] the identity of the 'allied law

_____

[5] Franks v. Delaware, 438 U.S. 154, 155-56 (1978) (holding "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, . . . a hearing [should] be held at the defendant's request").

8

enforcement agency'" that informed police Watson's vehicle crossed the George Washington Bridge.[6]

At the request of defendant and Watson, who joined the motion but did not file a brief, the judge denied the motion on the papers without conducting oral argument. In his cogent oral decision, the judge addressed the issues raised in view of the guiding legal principles. The judge found the evidence stated in Bonner's warrant affidavit was "plainly sufficient" to support the issuing judge's probable cause finding. In doing so, the judge detailed the police investigation, including: the informant's tip; the surveillance conducted on the storage unit and on defendant; the stop and search of Watson and Moya's vehicles and the evidence found; and the canine's positive "alert[] to the presence of narcotics at Unit 126." The judge concluded, based on all the information set forth in the affidavit, there was "absolutely no doubt" the issuing judge "had a substantial basis for concluding that probable cause existed," supporting issuance of a warrant to search the storage unit.

Following the judge's decision, Watson's retained counsel informed the judge he intended to file a brief on his motion to suppress evidence seized from

---

[6] Defendant's appellate appendix does not include his motion papers. See R. 2:6-1(a)(2) (prohibiting the inclusion of trial court briefs in the appellate appendix unless the issue raised "is germane to the appeal").

Moya's Toyota, previously denied without prejudice in view of plea negotiations. Defendant neither moved to suppress the same evidence nor join the motion.

On April 8, 2021, another judge held a testimonial hearing on Watson's motion. Bonner testified on behalf of the State. Watson did not testify or call any witnesses. Defendant and his retained counsel were present at the hearing. During direct examination, defendant's counsel objected to the form of a question about surveillance footage depicting Watson's and defendant's vehicles. The judge sustained the objection and the deputy attorney general (DAG) rephrased the question. Shortly thereafter, defendant's attorney indicated he had no objection to the admission of a document and video in evidence.

However, during an ongoing objection concerning foundation raised by defendant's attorney, the DAG objected, arguing defendant was "not involved in this motion." The judge continued the hearing, only permitting Watson's attorney to raise objections. But shortly after he cross-examined Bonner, the judge adjourned the hearing to permit briefing as to whether defendant's attorney was "permitted to cross-examine the witness."

On the April 26, 2021 return date, defendant's attorney indicated he "might even concede on the issue of standing" but the issue was "the scope of [the DAG's] direct examination of [Bonner]," which mentioned defendant. Citing N.J.R.E. 611, defendant's attorney argued he was permitted to cross-examine the detective on credibility, even though he lacked standing to challenge the search of Moya's vehicle "on constitutional grounds."

In his ensuing oral decision, the motion judge considered defendant's argument in view of our Supreme Court's holding in State v. Bruns, 172 N.J. 40 (2002), "evidence implicat[ing] a defendant in a crime is not, in and of itself, sufficient to confer standing." See id. at 58. Noting the motion was filed by Watson, and defendant was not charged as Watson's co-conspirator on the offenses involving the evidence seized from Moya's car, the judge found defendant lacked standing to contest the search of the vehicle. Accordingly, the judge concluded his attorney could not cross-examine Bonner.

On August 3, 2021, the judge issued a written decision and order denying Watson's motion. The judge found the investigatory stop of the Toyota "was valid based on the detectives' reasonable and articulable suspicion that Moya was engaged in criminal wrongdoing." Recognizing "the standard to justify an investigatory stop is low," the judge noted each stage of the investigation and

11

determined "the totality of the circumstances and the detective's training and experience" gave rise to sufficient reasonable suspicion to support the investigatory stop. The judge further determined the search of the car was constitutionally permissible because it did not exceed the scope of consent Moya granted police.

## II. Standing

For the first time on appeal, defendant expressly argues he had standing to challenge the stop of Moya's vehicle. Acknowledging he was not charged with any offenses emanating from the evidence seized from Moya's, defendant cites the Court's decision in State v. Mollica, 114 N.J. 329, 339-40 (1989), and now argues he had "a participatory interest" in that evidence because it was related to the investigation of his and Watson's alleged narcotics distribution from the storage unit. In its responding brief, the State maintains defendant lacked standing to challenge the narcotics seized from Moya's vehicle but addresses the merits, urging us to affirm the judge's decision denying Watson's motion.

Generally, "standing" is broadly defined. See State v. Lavrik, 472 N.J. Super. 192, 204 (App. Div. 2022). Our Supeme Court has long recognized:

> Under [this state's] automatic standing rule, virtually all
> defendants have standing to contest a search or seizure

A-3919-22

by police where they have either "a proprietary, possessory or participatory interest in either the place searched or the property seized," or if "possession of the seized evidence at the time of the contested search is an essential element of guilt."

[State v. Lamb, 218 N.J. 300, 313 (2014) (quoting State v. Alston, 88 N.J. 211, 228 (1981)).]

"[T]he State bears the burden of showing that defendant has no proprietary, possessory, or participatory interest in either the place searched or the property seized." State v. Randolph, 228 N.J. 566, 582 (2017).

"A participatory interest in seized evidence extends beyond the kind of relationship that could otherwise be considered only proprietary or possessory." Mollica, 114 N.J. at 339. Instead, a participatory interest "stresses the relationship of the evidence to the underlying criminal activity and defendant's own criminal role in the generation and use of such evidence." Ibid. "Unlike the terms 'possessory' or 'proprietary,' which denote property concepts, 'participatory' connotes some involvement in the underlying criminal conduct in which the seized evidence is used by the participants to carry out the unlawful activity." Id. at 339-40. A participatory interest thus "provides standing to a person who, challenging the seizure and prosecutorial use of incrimination evidence, had some culpable role, whether as a principal, conspirator, or accomplice, in a criminal activity that itself generated the evidence." Id. at 340.

13

In Mollica, our Supreme Court considered whether the defendant had standing to challenge telephone records seized from a co-defendant's hotel room without a warrant. Id. at 335. The records were then used as the basis to obtain warrants to search the hotel rooms of the defendant and his co-defendant. Id. at 336. Evidence of gambling offenses was found in the rooms. Ibid. At their trial, both defendants challenged the constitutionality of the warrantless seizure of the phone records. Ibid.

Pertinent to this appeal, the Court held the defendant had a participatory interest in the phone records seized from his co-defendant's room. Id. at 340. The Court noted the State alleged the defendant's "participat[ion] in the underlying criminal gambling activities," included use of the phone in his co-defendant's hotel room. Ibid. The Court concluded the defendant's involvement "in criminal gambling activities that generated telephone toll records invest[ed the] defendant with standing to challenge the validity" of the evidence seized from his co-defendant's hotel room. Ibid.

However, in Bruns, the Court clarified "evidence implicat[ing] a defendant in a crime is not, in and of itself, sufficient to confer standing." 172 N.J. at 58. "There also must be at a minimum some contemporary connection between the defendant and the place searched or the items seized." Ibid.

14

"[S]uppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." Ibid. (quoting Alderman v. United States, 394 U.S. 165, 171-72 (1969)).

In Bruns, the Court held the defendant failed to demonstrate he had a participatory interest in weapons seized from another individual's car when the defendant was not a passenger in the car or otherwise present when the search was conducted. Id. at 57-58. The weapons seized implicated both the defendant and the other individual in a robbery that took place one week prior to the contested search. Id. at 59. The Court concluded there was no evidence to suggest the defendant and the individual "had a continuing criminal relationship" when the weapons were seized, and substantial time had passed between the crime and the seizure of the weapons; therefore, the defendant lacked standing to challenge the search. Id. at 58.

Having considered defendant's belated contentions in view of these well-established principles, we are satisfied he lacked standing to challenge the stop of Moya's vehicle and the evidence seized pursuant to the consent search. Defendant neither filed a motion to suppress challenging the stop nor joined

A-3919-22

Watson's motion. He was not charged in the same conspiracy or substantive charges with Watson and Moya, which emanated from the evidence seized from Moya's car. Defendant's charges were based solely on the evidence seized from the storage unit and conspiracy with Watson. As the State maintains, the indictment charged two separate conspiracies – and defendant was not charged in the same conspiracy as Watson and Moya.

Because defendant was not a passenger in Moya's car and was not present nearby when the stop and search occurred, there was no "contemporary connection" between defendant and Moya. See Bruns, 172 N.J. at 58; cf. Mollica, 114 N.J. at 340. Defendant otherwise had no relationship with the evidence seized from Moya's car – and that evidence was not used against him to prove his guilt. See State v. Arthur, 149 N.J. 1, 13 (1997).

Assuming arguendo defendant had standing to challenge the stop of Moya's car, we have considered defendant's arguments on the merits and conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We affirm for the sound reasons stated in the motion judge's written decision. In addition, although not expressly challenged on appeal, we further conclude the judge did not abuse his discretion by barring trial counsel's

application to cross-examine Bonner.  See N.J.R.E. 611(a) (vesting the trial court with "control over the mode and order of interrogating witnesses").

### III.  Probable Cause to Search the Storage Unit

On appeal, defendant challenges the first motion judge's decision that the warrant to search his storage unit was based on sufficient probable cause. Defendant renews his argument that the informant's tip was not sufficiently corroborated.  For the first time before us, he claims:  "[b]ecause police lacked reasonable and articulable suspicion to stop Moya's car," the evidence seized therefrom "must be excised from the affidavit"; and the affidavit failed to detail the canine "was trained in narcotics detection."  Because defendant abandoned his Franks hearing argument, the issue is deemed waived.  See State v. Huang, 461 N.J. Super. 119, 125 (App. Div. 2018).

As a threshold matter, the motion judge's decision that probable cause supported the warrant was not based solely on the informant's tip but rather on the totality of the circumstances set forth in the affidavit.  See State v. Chippero, 201 N.J. 14, 27 (2009) (holding when ascertaining whether probable cause supports the validity of a search warrant, the court must look at "the totality of the circumstances").  Moreover, a search executed pursuant to a warrant enjoys the presumption of validity.  See State v. Marshall, 199 N.J. 602, 612 (2009).

"Doubt as to the validity of the warrant 'should ordinarily be resolved by sustaining the search.'" State v. Keyes, 184 N.J. 541, 554 (2005) (quoting State v. Jones, 179 N.J. 377, 389 (2004)). The defendant, therefore, bears the burden of challenging the search, and must "prove 'that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.'" Jones, 179 N.J. at 388 (quoting State v. Valencia, 93 N.J. 126, 133 (1983)). Probable cause exists where there is "a reasonable ground for belief of guilt" based on facts of which the officers had knowledge and reasonably trustworthy sources. Marshall, 199 N.J. at 610 (quoting State v. O'Neal, 190 N.J. 601, 612 (2007)).

Further, "[w]hen reviewing the issuance of a search warrant by another judge, the [motion judge] is required to pay substantial deference to the [issuing] judge's determination." State v. Dispoto, 383 N.J. Super. 205, 216 (App. Div. 2006) (citing State v. Kasabucki, 52 N.J. 110, 117 (1968)). Whether a search warrant was supported by adequate probable cause is a question of law, which this court reviews de novo. See State v. Handy, 206 N.J. 39, 44-45 (2011).

Information received by police "from confidential informants may serve as a valid basis for a court to find probable cause and issue a search warrant" provided there is "substantial evidence in the record to support the informant's

18

statements." Keyes, 184 N.J. at 555. "[T]he issuing court must consider the 'veracity and basis of knowledge' of the informant as part of" the totality of the circumstances analysis. Jones, 179 N.J. at 389 (quoting State v. Novembrino, 105 N.J. 95, 123 (1987)). "[I]f police corroborate 'information from which it can be inferred that the informant's tip was grounded on inside information, this corroboration is sufficient to satisfy the basis of knowledge prong' as well as the veracity prong." State v. Sullivan, 169 N.J. 204, 214 (2001) (quoting State v. Smith, 155 N.J. 83, 98 (1998)).

In the present matter, as the motion judge correctly recognized, Nunez Vasquez was not a "confidential" informant. Moreover, the information provided by Nunez Vasquez was sufficiently corroborated by TCU's investigation. The affidavit detailed Nunez Vasquez's disclosures to police, including he personally delivered narcotics to the storage unit at the direction of defendant and identified the storage unit to police. The phone number he provided police for defendant matched the storage facility's phone records. Police confirmed defendant and Watson owned the unit and accessed it numerous times in one month. Police also witnessed defendant visit the storage unit and engage in a suspected drug transaction. These circumstances of the

investigation, including the stop and search of Watson and Moya, were outlined in the warrant affidavit and sufficiently corroborated the informant's tip.

Having upheld the stop of Moya's car, we reject defendant's newly minted assertion that the stop was not valid. Because defendant's belated contention concerning the canine's training was not preserved for appellate review, we could decline to consider it. See State v. Witt, 223 N.J. 409, 419 (2015). For the sake of completeness, however, we have considered his assertion and conclude it lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed but remanded solely to correct the JOC. Jurisdiction is not retained.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-3919-22